987 P.2d 73 (1999)
139 Wash.2d 486
STATE of Washington, Respondent,
v.
Deborah Lee PARKER, Petitioner.
State of Washington, Respondent,
v.
Steven Lee Jines, Petitioner.
State of Washington, Respondent,
v.
Anna E. Hunnel, Petitioner.
Nos. 66147-2, 66522-2, 66523-1.
Supreme Court of Washington, En Banc.
November 4, 1999.
*75 Linda L. Edmiston, Kennewick, for petitioner Parker.
Robert M. Quillian and Thomas E. Doyle, Olympia, for petitioner Jines.
Joanne E. Dantonio, Port Orchard, for petitioner Hunnel.
Steve M. Lowe, Prosecuting Atty., for Franklin County.
*76 Frank William Jenny, II, Deputy, Pasco, Edward Holm, Prosecuting Atty., for Thurston County.
Steve E. Straume and Pamela B. Loginsky, Deputies, Olympia, for Respondent.
*74 JOHNSON, J.
These consolidated cases present the question whether the personal belongings of nonarrested vehicle passengers are subject to search incident to the arrest of the driver. In all three cases, the Court of Appeals found the searches valid under the authority of State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986). We reverse. We hold the search incident to arrest exception articulated in Stroud does not automatically extend to the "private affairs" of persons who are not under arrest, including personal possessions police know or should know belong to such nonarrested individuals. Under the facts of these cases, it is undisputed police knew the items searched belonged to individuals who were not under arrest. The facts do not show, nor does the State argue, the existence of any articulable, objective suspicion that any nonarrested passenger was armed or dangerous or had secreted contraband obtained from the arrestee. Therefore, there was no objective, lawful justification for the searches.

FACTS

State v. Parker
Deborah Parker was a passenger in a vehicle stopped for speeding. A license check revealed the license of the driver, Tim Thomas, was revoked. Thomas was arrested, handcuffed, and placed in the back of the patrol car. The arrest process lasted approximately 15 to 20 minutes, during which period Parker remained in the front passenger seat of the vehicle. Because an open container of beer was spotted in the vehicle, officers decided to check Parker's sobriety in order to determine whether the vehicle could be released into her custody. Parker was asked to step from the vehicle to take a Breathalyzer test. She complied. While the Breathalyzer was being administered, one of the officers noticed some cash lying on top of Parker's purse. The officer did not immediately decide to search the purse. Instead, he went back to Parker to ask to whom the money belonged. She said it belonged to her from the sale of a car. When Parker could produce no receipt or other proof of ownership of the money, the officer went back to his patrol car and learned from Thomas that the money belonged to him from a cashed paycheck. After the officers were satisfied the money actually did belong to Thomas, they removed the purse from the vehicle and asked Parker "if there was anything else in her purse [Thomas] placed there prior to being stopped." Tr. at 13. The officers then searched the purse, taking things out and setting them on the trunk of the vehicle as they went through it. Inside the purse was a small, two-by-three-inch snapped-shut coin purse. Inside this coin purse was a plastic baggie of methamphetamine. Parker was arrested and charged with unlawful possession of a controlled substance.
Before trial, Parker moved to suppress the evidence found in her purse. At the suppression hearing the court found the ownership of the money had been resolved to the officers' satisfaction before they searched the purse and there was no other evidentiary justification supporting the search. The court, however, found the search lawful incident to the arrest of the driver.

State v. Jines
Steven Jines was a passenger in a vehicle stopped for failing to signal a left turn. A license check revealed the driver, Christopher Oberst, had a suspended license. Oberst was arrested, handcuffed, and placed in the patrol car. Because Jines was not wearing his seat belt he was asked for identification, which he produced from his jacket lying on the center console between the two front seats. The officer then ordered Jines and another passenger out of the car and told them not to take anything as the officer intended to search the car. Jines complied, leaving his jacket behind. During the search of the vehicle, the officer searched through Jines' jacket and found a small black box inside it. Inside this box the officer found methamphetamine. Jines was arrested and *77 charged with unlawful possession of a controlled substance.
Before trial, Jines moved to suppress the evidence found in his jacket. At the hearing, the trial court found the officer knew, prior to searching it, that the jacket belonged to Jines. The arresting officer also testified that, except for the seat belt infraction, he had no reason to believe Jines was violating the law. The trial court found the search lawful incident to the arrest of the driver.

State v. Hunnel
Anna Hunnel, along with her three small children, was a passenger in a car driven by her husband John Hunnel. The vehicle was pulled over by the local sheriff on an unrelated suspicion of a "wanted" person in the area. However, at the scene the sheriff discovered Hunnel had outstanding arrest warrants for violation of a protection order and driving under the influence. A license check also revealed Hunnel's license was suspended. Mr. Hunnel was arrested and placed in the patrol car.
After John Hunnel was arrested, the sheriff asked Anna Hunnel for identification in order to determine whether the vehicle could be released into her custody. She produced her identification from a purse at her feet on the front passenger floorboard. Thereafter, the sheriff requested Anna Hunnel exit the vehicle so he could search it. She attempted to take her purse but the sheriff ordered her to leave it in the car. She complied. The sheriff then searched through Hunnel's purse as part of his search of the vehicle. Inside the purse he found a miniature Marlboro "cigarette pack" matchbox. Inside this matchbox he found two small baggies of methamphetamine. Anna Hunnel was arrested and charged with unlawful possession of a controlled substance.
Before trial, Hunnel moved to suppress the evidence found in her purse. At the suppression hearing, the State conceded the sheriff knew the purse belonged to Ms. Hunnel before he searched it. The court found the search lawful incident to the arrest of the driver.

PROCEDURAL HISTORY
In each case, the Court of Appeals affirmed the validity of the searches under the authority of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (search of vehicle passenger compartment, including all containers therein, valid incident to arrest of driver), and Stroud, 106 Wash.2d 144, 720 P.2d 436 (search of vehicle passenger compartment, except locked containers, valid incident to arrest of driver). See State v. Hunnel, 89 Wash.App. 638, 949 P.2d 847 (1998); State v. Parker, 88 Wash.App. 273, 944 P.2d 1081 (1997); State v. Jines, No. 20454-1-II (Wash.Ct.App. Jan. 23, 1998). We granted review and consolidated these cases in order to determine whether the lawful scope of a vehicle search incident to the arrest of the driver extends to the personal belongings of nonarrested passengers.

ANALYSIS
Defendants claim their right to be free from warrantless searches was violated under both the state and federal constitutions. Since we find the searches violated article I, section 7 of the state constitution, we do not decide whether the warrantless searches also violated the Fourth Amendment.[1]See State v. Young, 123 Wash.2d 173, 188, 867 P.2d 593 (1994). Our analysis begins and ends, therefore, by examining the validity of the *78 searches under article I, section 7 of the state constitution.[2]

Article I, Section 7
It is by now axiomatic that article I, section 7 provides greater protection to an individual's right of privacy than that guaranteed by the Fourth Amendment. State v. Ferrier, 136 Wash.2d 103, 111, 960 P.2d 927 (1998); State v. Hendrickson, 129 Wash.2d 61, 69 n. 1, 917 P.2d 563 (1996); Young, 123 Wash.2d at 180, 867 P.2d 593; Stroud, 106 Wash.2d at 148, 720 P.2d 436; State v. Williams, 102 Wash.2d 733, 741-42, 689 P.2d 1065 (1984); State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984) (citing cases).
Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision differs from the Fourth Amendment in that article I, section 7 "clearly recognizes an individual's right to privacy with no express limitations." State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982). See also Ferrier, 136 Wash.2d at 111, 960 P.2d 927. Accordingly, while article I, section 7 necessarily encompasses those legitimate expectations of privacy protected by the Fourth Amendment, its scope is not limited to subjective expectations of privacy but, more broadly, protects "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." Myrick, 102 Wash.2d at 511, 688 P.2d 151. See also State v. Mendez, 137 Wash.2d 208, 219, 970 P.2d 722 (1999); State v. Johnson, 128 Wash.2d 431, 446, 909 P.2d 293 (1996); State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990).
We have long held the right to be free from unreasonable governmental intrusion into one's "private affairs" encompasses automobiles and their contents. See, e.g., Mendez, 137 Wash.2d at 217, 219, 970 P.2d 722; Hendrickson, 129 Wash.2d at 69 n. 1, 917 P.2d 563 (citing cases); City of Seattle v. Mesiani, 110 Wash.2d 454, 456-57, 755 P.2d 775 (1988) (citing cases); State v. Kennedy, 107 Wash.2d 1, 4-5, 726 P.2d 445 (1986); State v. Gibbons, 118 Wash. 171, 187-88, 203 P. 390 (1922).
More than 75 years ago, in Gibbons, we explicitly recognized the citizens of this state have a right to the privacy of their vehicles.
We note that the case before us does not involve a search ... in the home of appellant; but manifestly the constitutional guaranty that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law," protected the person of appellant, and the possession of his automobile and all that was in it, while upon a public street of Ritzville, against arrest and search without authority of a warrant of arrest, or a search warrant, as fully as he would have been so protected had he and his possession been actually inside his own dwelling; that is, his "private affairs" were under the protection of this guaranty of the constitution, whether he was within his dwelling, upon the public highways, or wherever he had the right to be.
Gibbons, 118 Wash. at 187-88, 203 P. 390 (quoting Wash. Const. art. I, § 7) (most emphasis added).
In Mesiani, we reiterated the holding of Gibbons and subsequent cases, stating that "[f]rom the earliest days of the automobile in this state, this court has acknowledged the privacy interest of individuals and objects in automobiles." Mesiani, 110 Wash.2d at 456-57, 755 P.2d 775 (citing cases). We expressly adopted the reasoning of the United States Supreme Court into our article I, section 7 analysis:
*79 An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed...."
Mesiani, 110 Wash.2d at 457, 755 P.2d 775 (quoting Delaware v. Prouse, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (footnote omitted)).
More recently, in Hendrickson, we refused to hold under article I, section 7 that a work release convict had a "diminished expectation of privacy" in his vehicle. Hendrickson, 129 Wash.2d at 71, 917 P.2d 563. We expressly held that any alleged subjective expectation of privacy, even if it was reduced, "does not constitute an exception to the requirement of a warrant under art. I, § 7." Hendrickson, 129 Wash.2d at 71, 917 P.2d 563.
Just last winter term, in Mendez, we stated that "preexisting Washington law indicates a general preference for greater privacy for automobiles and a greater protection for passengers than the Fourth Amendment...." Mendez, 137 Wash.2d at 219, 970 P.2d 722 (emphasis added). We rejected the proposition that the authority to order a driver to remain in or exit the vehicle to ensure officer safety following a traffic stop automatically extended to passengers. Mendez, 137 Wash.2d at 220, 970 P.2d 722. We reasoned that to adopt "such a bright line, categorical rule" would constitute an unreasonable intrusion into the privacy interests of passengers under article I, section 7. Mendez, 137 Wash.2d at 220, 970 P.2d 722. We held, therefore, that officers must "articulate an objective rationale" to support their actions with regard to a passenger in order to prevent "groundless police intrusions on passenger privacy." Mendez, 137 Wash.2d at 220, 970 P.2d 722.
The foregoing underscores our continued recognition of a constitutionally protected privacy interest the citizens of this state have held, and should continue to hold, in their automobiles and the contents therein. Likewise, vehicle passengers hold an independent, constitutionally protected privacy interest. This interest is not diminished merely upon stepping into an automobile with others.
In the cases now before us the Stateargues the. warrantless searches at issue fall within the search incident to arrest exception as articulated in State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986). Essentially, the State argues the personal possessions of passengers are merely "containers" within the automobile and are, thus, legitimately subject to search whether or not they belong to the arrested individual. We disagree.
Initially, we reiterate that "[a]ny analysis of article I, section 7 in Washington begins with the proposition that warrantless searches are unreasonable per se." State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998) (citing Hendrickson, 129 Wash.2d at 70, 917 P.2d 563). This is a strict rule. White, 135 Wash.2d at 769, 958 P.2d 982. Exceptions to the warrant requirement are limited and narrowly drawn. White, 135 Wash.2d at 769, 958 P.2d 982; Hendrickson, 129 Wash.2d at 70-71, 917 P.2d 563. The State, therefore, bears a heavy burden to prove the warrantless searches at issue fall within the exception it argues for. See Johnson, 128 Wash.2d at 447, 909 P.2d 293.
Under article I, section 7, a lawful custodial arrest is a constitutionally required prerequisite to any search incident to arrest. State v. Cyr, 40 Wash.2d 840, 843, 246 P.2d 480 (1952), overruled on other grounds by State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983). It is the fact of arrest itself that provides the "authority of law" to search, therefore making the search permissible under article I, section 7. Cyr, 40 Wash.2d at 843, 246 P.2d 480; Stroud, 106 Wash.2d at *80 164, 720 P.2d 436 (Durham, J., concurring in the result). See also State v. Michaels, 60 Wash.2d 638, 643, 374 P.2d 989 (1962) (citing with approval State v. Cyr, 40 Wash.2d 840, 246 P.2d 480). Thus, while the search incident to arrest exception functions to secure officer safety and preserve evidence of the crime for which the suspect is arrested, in the absence of a lawful custodial arrest a full blown search, regardless of the exigencies, may not validly be made. See, e.g., State v. Johnson, 71 Wash.2d 239, 242, 427 P.2d 705 (1967) (lawful arrest is a prerequisite to a lawful search); State v. Miles, 29 Wash.2d 921, 933, 190 P.2d 740 (1948) (if arrest is unlawful, search is unlawful); Gibbons, 118 Wash. at 183, 203 P. 390 (search following unlawful arrest has "no lawful support as incident thereto"). It states the obvious to observe that where a person is not under arrest there can be no search incident thereto.
We find the fact the defendants here were not under arrest at the time their possessions were searched determinative. In our review of our search incident to arrest jurisprudence we do not find, and the State has not cited to, a single authority for the proposition that the arrest of one person, without more, provides the authority to search another, nonarrested individual.[3] To construe the search incident to arrest exception broadly so as to automatically authorize the search of nonarrested individuals because those individuals happen to be associated with the arrestee, or within the vicinity of the arrest, would distort the narrow limits of the exception and offend fundamental constitutional principles. The limited scope of the exception, as well as the basic proposition that constitutional rights are individually held, guides our analytical focus.
Under article I, section 7, we have specifically recognized that "[r]egardless of the setting ... `constitutional protections [are] possessed individually.'" State v. Broadnax, 98 Wash.2d 289, 296, 654 P.2d 96 (1982) (quoting Ybarra v. Illinois, 444 U.S. 85, 92, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)) (second alteration in original). Accordingly, a person's "mere presence" in a place validly to be searched does not justify a search of that person. Broadnax, 98 Wash.2d at 295, 301, 654 P.2d 96; see State v. Worth, 37 Wash.App. 889, 892, 683 P.2d 622 (1984). Merely associating with a person suspected of criminal activity "does not strip away" individual constitutional protections. Broadnax, 98 Wash.2d at 296, 654 P.2d 96. Thus, where officers do not have articulable suspicion that an individual is armed or dangerous and have nothing to independently connect such person to illegal activity, a search of the person is invalid under article I, section 7. See Broadnax, 98 Wash.2d at 296, 654 P.2d 96.[4]
The principles we adhered to in Broadnax apply with equal force in the context of automobile stops and searches. Individual constitutional' rights are not extinguished by mere presence in a lawfully stopped vehicle. See, e.g., Mendez, 137 Wash.2d at 218-20, 970 P.2d 722 (under article I, section 7, rights of passenger are independent of driver); State v. Larson, 93 Wash.2d 638, 642-45, 611 P.2d 771 (1980) (stop of vehicle for offense committed by driver does not in and of itself reasonably provide officer with grounds to investigate passenger; in order to be valid under article I, section 7, officer must have independent basis to suspect passenger). See also United States v. Di Re, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (a person does not, "by mere presence in a suspected car, lose[] immunities from search of his person to which he would otherwise be entitled.").
Although we have not specifically addressed the issue under article I, section 7, we have recognized that readily recognizable personal effects are protected from search to *81 the same extent as the person to whom they belong. See State v. Hill, 123 Wash.2d 641, 644, 647, 870 P.2d 313 (1994). See also Worth, 37 Wash.App. at 892, 683 P.2d 622. Personal items may be "so intimately connected with" an individual that a search of the items constitutes a search of the person. Hill, 123 Wash.2d at 644, 870 P.2d 313. Personal effects need not be worn or held to fall within the scope of protection. Worth, 37 Wash.App. at 893-94, 683 P.2d 622 (narrow focus on whether person is holding or wearing a personal item undercuts purpose of constitutional protection and leaves vulnerable to search readily recognizable personal effects which a person has under his or her control and seeks to preserve as private).
Nevertheless, the State argues officer safety justifies the search of nonarrested passengers. However, the authority to conduct a full blown evidentiary search cannot constitutionally derive from the need to secure officer safety alone, although, indisputably, the search incident to arrest exception functions primarily to achieve this purpose. Rather, despite the inevitable danger an officer may face in the field, the authority to search following an arrest stems directly from the fact of the arrest itself and the concomitant lessening of the arrestee's privacy interest. E.g., State v. White, 44 Wash. App. 276, 278, 722 P.2d 118 (1986) (once arrested there is a diminished expectation of privacy in the person of the arrestee). It is precisely because the privacy interest of a nonarrested individual remains largely undiminished that full blown evidentiary searches of nonarrested individuals are constitutionally invalid even where officers may legitimately fear for their safety. As the United States Supreme Court has repeatedly stated, "there is a `distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons [to ensure officer safety].'" United States v. Robinson, 414 U.S. 218, 227, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (quoting Terry v. Ohio, 392 U.S. 1, 25, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
`[A search incident to arrest], although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, is also justified on other grounds, and can therefore involve a relatively extensive exploration of the person. A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.
`... An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person.'
Robinson, 414 U.S. at 227-28, 94 S.Ct. 467 (quoting Terry, 392 U.S. at 25-26, 88 S.Ct. 1868) (citations omitted) (footnote omitted). Our article I, section 7 precedent is in accord with this analysis and approach.
Despite the State's assertion that Stroud should control, we find nothing in that decision from which to conclude the privacy rights of nonarrested vehicle occupants are categorically compromised incident to the arrest of some other vehicle occupant. In Stroud, although we agreed in principle with the United States Supreme Court that concern for officer safety and the destruction of evidence justifies a passenger compartment search following the arrest of the vehicle driver and occupants, we stated that because of the heightened privacy protections guaranteed by our state constitution, "we do not believe that these exigencies always allow a search." Stroud, 106 Wash.2d at 151, 720 P.2d 436. Rather, the exigencies flowing from an arrest "must be balanced against whatever privacy interests the individual has *82 in the articles in the car." Stroud, 106 Wash.2d at 152, 720 P.2d 436.
We have continued to reiterate that the purpose of the Stroud rule is to identify "a point at which privacy interests outweigh the exigencies of an arrest...." State v. Fladebo, 113 Wash.2d 388, 395, 779 P.2d 707 (1989). Significantly, Stroud, and all our precedent following it, considered the exigencies of an arrest situation against the privacy interests of arrested individuals. Here, the items searched belonged to individuals who were not under arrest. There is simply no authority under our precedent to suggest that personal belongings clearly and closely associated with nonarrested vehicle occupants are subject to full blown police searches merely because some other occupant in the vehicle is arrested. Stroud does not stand for that proposition; Broadnax contradicts it. As such, Stroud and its progeny are neither controlling nor persuasive of the State's position.
We do not disagree with the State that under certain circumstances nonarrested individuals may pose a threat to officer safety in an arrest situation, or may frustrate the State's interest in having its laws obeyed by secreting contraband on behalf of the arrestee. As the above discussion demonstrates, however, we engage in a delicate balancing of interests, weighing safety and evidentiary concerns against the basic notion that the people of this state enjoy a measure of privacy that is, and will forever be, unassailable. See State v. Young, 123 Wash.2d 173, 181, 867 P.2d 593 (1994) (Washington Constitution protects those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass and does not depend on subjective expectations of privacy).
As against the privacy interests of a nonarrested individual, the balance has already been struck. Accordingly, while we have recognized in the context of an automobile stop that nonsuspect companions may pose a danger to officers, a generalized concern for officer safety has never justified a full search of nonarrested companions. See State v. Kennedy, 107 Wash.2d 1, 12, 726 P.2d 445 (1986). Even in the context of an automobile stop, when a person is not under arrest the scope of any search of such individual is limited to ensure officer safety only and must be supported by objective suspicions that the person searched may be armed or dangerous. See Kennedy, 107 Wash.2d at 11-13, 726 P.2d 445; see also State v. Hudson, 124 Wash.2d 107, 112, 874 P.2d 160 (1994).
We do conclude, however, that whether or not articulable suspicion exists sufficient to justify a patdown for weapons,[5] the circumstance of an arrest falls squarely within the rule of Mendez. Thus, a vehicle stop and arrest in and of itself provides officers an objective basis to ensure their safety by "controlling the scene," including ordering passengers in or out of the vehicle as necessary. See State v. Mendez, 137 Wash.2d 208, 220-21, 970 P.2d 722 (1999).
As to the potential loss of evidence, under the facts presented here there was no evidence to be lost. The defendants were not under arrest. Thus, without some further predicate, no evidence could lawfully be seized from them.[6]Kennedy, 107 Wash.2d at 12, 726 P.2d 445. Furthermore, where individuals are arrested for driving with license suspended, there is simply no evidence of the crime to be hidden or lost. Cf. Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) (The need to *83 discover and preserve evidence is not present where defendant was stopped for speeding. "No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car.") (emphasis added).
We hold the arrest of one or more vehicle occupants does not, without more, provide the "authority of law" under article I, section 7 of our state constitution to search other, nonarrested vehicle passengers, including personal belongings clearly associated with such nonarrested individuals. In determining whether an item within a vehicle is "clearly and closely" associated with a nonarrested passenger, we adopt the test recently annunciated by the Wyoming Supreme Court in Houghton v. State, 956 P.2d 363 (Wyo.1998), rev'd, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).
In Houghton, the Wyoming Supreme Court invalidated the search of a woman's purse found in a vehicle where the police had probable cause to search the vehicle but did not have probable cause to believe the passenger was involved in any criminal activity. Houghton, 956 P.2d at 370. The Wyoming court adopted a straightforward rule allowing police officers to assume all containers within the vehicle may be validly searched, unless officers know or should know the container is a personal effect of a passenger who is not independently suspected of criminal activity and where there is no reason to believe contraband is concealed within the personal effect immediately prior to the search.[7]Houghton, 956 P.2d at 370, 372.
The need for a "bright line" rule, as urged by the State, does not overcome a nonarrested individual's privacy interest. Officers in the field routinely make, often subtle, factual determinations of probable cause, articulable suspicion, and the like. As the facts of these consolidated cases demonstrate, it is not overly difficult to determine to whom a personal effect belongs.
Not even in Stroud did we completely adopt the Belton "bright line rule," finding instead that even arrested individuals have a privacy interest in locked containers that is not overcome by the exigencies surrounding an arrest. Stroud, 106 Wash.2d at 151, 720 P.2d 436 (citing New York v. Belton, 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). Significantly, the categorical rule adopted in Belton is itself premised entirely on the fact of a valid custodial arrest:
[Any container found within the passenger compartment] may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.
Belton, 453 U.S. at 461, 101 S.Ct. 2860 (emphasis added). See also State v. Stroud, 106 Wash.2d 144, 164, 720 P.2d 436 (1986) (the fact of a lawful custodial arrest provides required "authority of law" under article I, section 7 to search vehicle of arrestee) (Durham, J., concurring in the result).
Thus, while a bright line rule such as the rule in Stroud makes the police officer's job easier, we refuse to give it "such broad application that it totally submerges the protections our state's founders obviously had in mind when they adopted article I, section 7 of our state constitution." State v. Johnson, 128 Wash.2d 431, 459-60, 909 P.2d 293 (1996) (Alexander, J., concurring). An individualized attention to the privacy interests of nonarrested *84 passengers is more in line with the balancing of interests our precedent requires.
Based on the foregoing, we find the searches at issue invalid. Under the facts of these cases, it is undisputed police knew the items searched belonged to individuals who were not under arrest. The facts do not show, nor does the State argue, the existence of any articulable, objective suspicion that any nonarrested passenger was armed or dangerous or had secreted contraband obtained from the arrestee.[8] Therefore, there was no objective, lawful justification for the searches.

CONCLUSION
"The word `automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 403 U.S. 443, 461-62, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Nor do the heightened protections of article I, section 7 fade away or disappear within the confines of an automobile. A rule that protects nonarrested, nonsuspected third parties and their recognizable personal effects against categorical searches based merely on presence in an automobile in which somebody else is arrested strikes the proper balance between the significant privacy interests of innocent third parties and the exigencies that may be faced by officers at the scene of an automobile stop and arrest.
Pursuant to Stroud, officers may lawfully search a vehicle passenger compartment incident to the arrest of the driver. Pursuant to our rationale above, officers may assume all containers in the vehicle are lawfully subject to search. If, however, officers know or should know certain containers within the vehicle belong to nonarrested occupants, such containers may not be searched absent an independent, objective basis to believe the containers hold a weapon or evidence.
Reversed and remanded with directions to suppress the evidence.
SMITH, MADSEN, and SANDERS, JJ., concur.
TALMADGE, J. (concurring).
I concur in the majority's disposition of these three cases, but write separately because the opinions in this case perpetuate an erroneous conception of the exception to the requirement of a search warrant under article I, section 7 of the Washington Constitution. I would hold under article I, section 7 that law enforcement officers may search any unlocked item found in the passenger compartment of a vehicle, as we have articulated in State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986), and State v. Johnson, 128 Wash.2d 431, 909 P.2d 293 (1996). That search, however, is confined to a search for weapons to protect arresting officers from harm. In these cases, as the officers' search included places where no weapons reasonably could be secreted, the evidence must be suppressed.
Our jurisprudence under article I, section 7 of the Washington Constitution, like the jurisprudence under the Fourth Amendment to the United States Constitution, unfortunately tends to overlook two vital principles. First, both constitutional provisions establish as their fundamental principle the requirement that law enforcement agencies must obtain a warrant to conduct a search. This principle applies to automobiles. State v. Hendrickson, 129 Wash.2d 61, 917 P.2d 563 (1996). We must assume at the outset a warrant is required to search before we analyze exceptions to that requirement, rather than analyzing the possible exceptions first. Id. at 70, 917 P.2d 563. Keeping in mind our oft-stated bedrock principlewarrantless searches are per se unreasonablehelps avoid doctrinal confusion in our analyses. Second, we permit warrantless searches incident to an arrest solely out of concern for the safety of law enforcement officers; the exception should be confined to that purpose.
The right to search incident to arrest is a recognized exception to the requirement of a warrant under article I, section 7. Hendrickson, 129 Wash.2d at 71, 917 P.2d 563. While *85 on the New York Court of Appeals, Judge Cardozo noted: the exception "goes back beyond doubt to the days of the hue and cry, when there was short shrift for the thief who was caught `with the mainour,' [in the act] still `in seisin of his crime[,]'" that is, the thief was caught "red-handed." People v. Chiagles, 237 N.Y. 193, 196, 142 N.E. 583, 32 A.L.R. 676 (1923) (citing 2 SIR FREDERICK POLLOCK & FREDERICK w. MAITLAND, HISTORY OF ENGLISH LAW 577-78 (1968)). Historically, the exception allowed only a limited search. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (permissible scope of search incident to arrest extends to "the arrestee's person and the area `within his immediate control'"). As Judge Cardozo stated in 1927:
The basic principle is this: Search of the person is unlawful when the seizure of the body is trespass, and the purpose of the search is to discover grounds as yet unknown for arrest or accusation. Search of the person becomes lawful when the grounds for arrest and accusation have been discovered, and the law is in the act of subjecting the body of the accused to its physical dominion.
The distinction may seem subtle, but in truth it is founded in shrewd appreciation of the necessities of government.... The peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed. The search being lawful, he retains what he finds if connected with the crime.
Chiagles, 237 N.Y. at 197, 142 N.E. 583 (citation omitted).
Although the search incident to arrest exception is rooted in the common-law tradition of England, the seminal articulation of it in America occurred in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), where the United States Supreme Court stated:
What then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases.
Weeks, 232 U.S. at 392, 34 S.Ct. 341. See also United States v. Robinson, 414 U.S. 218, 224-36, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (discussing the development of the rule in America); Chimel, 395 U.S. at 755-64, 89 S.Ct. 2034 (discussing the development of the rule under Supreme Court's Fourth Amendment jurisprudence).
The historical, limited exception permitting a search of the person of the arrestee was quickly embellished to include whatever was found within the arrestee's "control." Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). Only months after Carroll, the rule was further expanded, without explanation, to make permissible a search of "the place where the arrest is made[.]" Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925).
In his dissent in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), overruled in part on other grounds by Chimel, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, where the Court upheld the search of defendant's place of business as incident to the arrest, Justice Felix Frankfurter characterized the expanding scope of allowable searches as a "progressive distortion" of the historical rule that had limited such searches to the person of the arrestee and to articles "in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person." Rabinowitz, 339 U.S. at 75, 78, 70 S.Ct. 430 (Frankfurter, J., dissenting). According to Justice Frankfurter, Weeks and the subsequent cases approving an expansive scope of search not only beyond traditional limits but beyond the necessities underlying the rule, merely proved "how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision." Rabinowitz, 339 U.S. at 75, 70 S.Ct. 430 (Frankfurter, J., dissenting). Thus, Justice Frankfurter concluded "[t]he short of it is that the right to search the *86 place of arrest [as opposed to the body of the arrestee] is an innovation based on confusion, without historic foundation, and made in the teeth of a historic protection against it." Rabinomtz, 339 U.S. at 79, 70 S.Ct. 430 (Frankfurter, J., dissenting).
Eventually, some 19 years later, in Chimel, the Supreme Court returned to the more limited, traditional conception of the rule as urged by Justice Frankfurter, narrowing the scope of search to "the arrestee's person ... and the area `within his immediate control'[.]" Chimel, 395 U.S. at 763, 89 S.Ct. 2034. In so holding, the Court stated:
A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest.
Chimel, 395 U.S. at 759, 89 S.Ct. 2034 (citations omitted) (quoting Trupiano v. United States, 334 U.S. 699, 705, 708, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948)). Chimel, 395 U.S. at 764, 89 S.Ct. 2034. The Court noted "`[t]he scope of [a] search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.'" Chimel, 395 U.S. at 762, 89 S.Ct. 2034 (alterations in original) (quoting Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reiterating the exception is premised on the need to discover weapons and prevent the destruction of evidence, the Court reasoned that where the scope of a search incident to arrest goes beyond these necessities, it loses its primary justification and is constitutionally impermissible. Chimel, 395 U.S. at 764, 768, 89 S.Ct. 2034.
Only four years later, distinguishing Chimel's line of reasoning, the Supreme Court in Robinson rejected the notion that the validity of a search incident to arrest depended in each case upon the probability that weapons or evidence would be found on the person of the arrestee. Robinson, 414 U.S. at 235, 94 S.Ct. 494. The Court specifically distinguished a search of the person of the arrestee, as opposed to search of the area within the control of the arrestee. Robinson, 414 U.S. at 224, 94 S.Ct. 494. In regard to a search of the person of the arrestee, the Court for the first time stated an arrest provides "an affirmative authority to search" and, thus, is not merely an "exception to the warrant requirement" but a "reasonable" search that does not offend the Fourth Amendment. Robinson, 414 U.S. at 226, 235, 94 S.Ct. 494. The Court underscored "that `there is a distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons.'"
"The [search incident to arrest], although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, is also justified on other grounds, and can therefore involve a relatively extensive exploration of the person. A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a `full' search, even though it remains a serious intrusion.
... An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes brief, though far from inconsiderable, intrusion upon the sanctity of the person."
Robinson, 414 U.S. at 227-28, 94 S.Ct. 494 (citations omitted) (quoting Terry v. Ohio, 392 U.S. at 25-26, 88 S.Ct. 1868). Thus, "It is the fact of the lawful arrest which establishes the authority to search," whether or not the particular circumstances provide an objective fear for officer safety or a need to *87 preserve evidence. Robinson, 414 U.S. at 236-36, 94 S.Ct. 494.
Although the rule of Chimel and that of Robinson is analytically distinct (Chimel applies to the area within the immediate control of the arrestee and Robinson to the person of the arrestee),[1] in announcing its "bright-line rule" in the context of automobile searches incident to arrest, the Court relied primarily on the rationale that the fact of arrest justified a categorical, unlimited search of the passenger area of the vehicle. See New York v. Belton, 453 U.S. 454, 461, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). While the Court adopted for purposes of Chimel "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably" within reach of the arrestee (even after the arrestee is handcuffed in the back of the patrol car), Belton, 453 U.S. at 460, 101 S.Ct. 2860, it premised the unlimited scope of the search directly on the fact of arrest:
[Any container found within the passenger compartment] may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.
Belton, 453 U.S. at 461, 101 S.Ct. 2860. Thus, under federal law, the authority to perform a full-scale search of an automobile passenger compartment following an arrest is entirely independent of the exigencies found in any particular case. See Belton, 453 U.S. at 461, 101 S.Ct. 2860. A passenger compartment search "requires no additional justification" other than the arrest itself. Belton, 453 U.S. at 461, 101 S.Ct. 2860.
Early adherence to a rule permitting the search of the person of an arrestee dates back more than 100 years under Washington law. See, e.g., State v. Nordstrom, 7 Wash. 506, 510, 35 P. 382 (1893) ("But it has never been held that personal effects of every kind could not be taken from the person of a prisoner and used upon his trial for what they may be worth as criminating [sic] evidence."), aff'd, 164 U.S. 705, 17 S.Ct. 997, 41 L.Ed. 1183 (1896); State v. Burns, 19 Wash. 52, 55, 52 P. 316 (1898) (stating generally without citation to authority that money taken from the defendant could be entered into evidence "as a circumstance tending to show guilt"); State v. Royce, 38 Wash. 111, 116, 80 P. 268 (1905) (citing to Nordstrom and Burns for the proposition "this court has held that, in a criminal action, articles, personal effects, or money, taken from the person of a defendant, might be offered in evidence against him").
Our first citation to a formal "search incident to arrest exception," however, appears in State ex rel. Murphy v. Brown, 83 Wash. 100, 106, 145 P. 69 (1914) (citing Weeks, 232 U.S. at 383, 393, 34 S.Ct. 341, for the proposition that the right to search "the person of one under legal arrest ... has always been recognized under English and American law, and has been uniformly maintained in many cases").
As under federal jurisprudence, the exception in Washington quickly expanded, without explanation or analysis, to include expansive searches not only of the place of arrest, but any place linked with the arrestee regardless of where the arrest took place. See, e.g., State v. Thomas, 183 Wash. 643, 644-45, 49 P.2d 28 (1935) (the defendant was arrested at some other location and transported back to his rooming quarters which were then searched); State v. Innocenti, 170 Wash. 286, 292, 16 P.2d 439 (1932) (search of premises where arrest took place); State v. Blight, 150 Wash. 475, 477, 273 P. 751 (1929) (search of room where arrest took place); State v. Beaupre, 149 Wash. 675, 676-77, 272 P. 26 (1928) (search of apartment valid although arrest took place in street). These cases all cite as authority State v. Evans, 145 *88 Wash. 4, 258 P. 845 (1927). In that case, the defendant was arrested in the street and transported to the police station. Id. at 9, 258 P. 845. During questioning at the station house, he divulged the address of his rooming quarters. Id. Police immediately went and searched the premises without a warrant. Id. In upholding the validity of the search, without any specific citation to authority, we stated:
In so far as our examination of the cases has extended, all of the cases hold, even those which adhere most strictly to the rule that evidence obtained by an unlawful search is, inadmissible as evidence, that, where the accused is arrested in his home, or place of residence, a search of the home or place of residence may be lawfully made for evidence of his guilt. In this instance, the defendant was on his way to his place of residence when arrested, and the fact that he was caught before he reached the place ought not to require the application of a different rule.
Id. at 13, 258 P. 845 (emphasis added) (citing no authority).
Evans is not consistent with our holding in Hendrickson, 129 Wash.2d 61, 917 P.2d 563, where we required a warrant to search a prisoner's impounded vehicle after the police had received a tip that contraband was secreted in the vehicle. In Evans, once the police had taken Evans into custody, there were no longer exigent circumstances and the subsequent warrantless search of Evans's apartment cannot be considered as incident to his arrest. The police should have obtained a warrant to justify a search of Evans's apartment.[2]
The Prohibition Era first saw the exception under our case law broadly applied to permit the search of automobiles. See, e.g., State v. Hughlett, 124 Wash. 366, 214 P. 841 (1923), overruled on other grounds by State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983); State v. Deitz, 136 Wash. 228, 239 P. 386 (1925), overruled on other grounds by Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Miller, 151 Wash. 114, 275 P. 75 (1929), overruled on other grounds by Ringer, 100 Wash.2d 686, 674 P.2d 1240. See also State v. Gibbons, 118 Wash. 171, 182, 203 P. 390 (1922) (refusing to apply the exception in the context of an automobile search because the search took place before the arrest). Our extrapolation of a broadly permissive rule in Hughlett gives relevance to Justice Frankfurter's later complaint that the original, limited exception under the common law had undergone a "progressive distortion." In Hughlett, again without citation to authority, we reasoned:
It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged. If a search may be made of the person or clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or suitcase which he may be carrying. From this it seems to us to follow logically that a similar search, under the same circumstances, may be made of the automobile of which he has possession and control at the time of his arrest. This is true because the person arrested has the immediate physical possession, not only of the grips or suit cases which he is carrying, but also of the automobile which he is driving and of which he has control.
Hughlett, 124 Wash. at 370, 214 P. 841 (emphasis added). Subsequent Washington cases expanded the rule to include the search of vehicles, owned by the arrestee, but unoccupied at the time of arrest. See State v. Cyr, 40 Wash.2d 840, 843, 246 P.2d 480 (1952), overruled by State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Jackovick, 56 Wash.2d 915, 916-17, 355 P.2d 976 (1960), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240.
*89 Washington case law, following federal precedent, narrowed the scope of search incident to arrest following the United States Supreme Court's ruling in Chimel. See, e.g., State v. Simpson, 95 Wash.2d 170, 191, 622 P.2d 1199 (1980) (search of vehicle is not incident to arrest when defendant not in vehicle when arrested); State v. Smith, 88 Wash.2d 127, 135, 559 P.2d 970 (federal law forbids "wide-ranging, exploratory, rummaging, ransacking" search incident to arrest), cert. denied, 434 U.S. 876, 98 S.Ct. 226, 54 L.Ed.2d 155 (1977); State v. Johnson, 71 Wash.2d 239, 242-3, 427 P.2d 705 (1967) (search of vehicle for evidence of another crime is not incident to arrest for public drunkenness); State v. Riggins, 64 Wash.2d 881, 886, 395 P.2d 85 (1964) (search of vehicle the day after arrest is not "incident to a lawful arrest").
Washington courts, however, had not carefully analyzed the arrest exception in the context of Washington's own Constitution before the 1970s. Article I, section 7 affords independent state constitutional grounds for analysis of the issue. See, e.g., State v. Hehman, 90 Wash.2d 45, 49, 578 P.2d 527 (1978) (invalidating on state law grounds full custodial arrest for minor traffic violation and search incident thereto).
Ultimately, in Ringer, we engaged in an extensive historical analysis of the search incident to arrest exception, concluding that, at the time of the adoption of article I, section 7, the exception was "a narrow rule intended solely to protect against frustration of the arrest itself or destruction of evidence by the arrestee." Ringer, 100 Wash.2d at 698, 674 P.2d 1240. In accordance with the traditional, limited scope of the exception, we specifically declined to follow the "bright-line rule" adopted by the United States Supreme Court in Belton and, instead, adopted a case-by-case "totality of the circumstances" test to determine whether the exigencies in fact supported a warrantless search in any given case. Ringer, 100 Wash.2d at 698-702, 674 P.2d 1240.
Ringer remained good law fewer than three years. In Stroud, a plurality decision, we overruled Ringer to the extent it required the validity of a search of a vehicle incident to arrest to be tested under the "totality of the circumstances" in each particular case. Stroud, 106 Wash.2d at 151, 720 P.2d 436. Instead, we agreed in principle with the United States Supreme Court's reasoning in Belton that danger to police officers and possible destruction of evidence justified the search of the passenger compartment of an automobile incident to a lawful custodial arrest. Stroud, 106 Wash.2d at 151, 720 P.2d 436 (citing Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768). Recent cases have not diminished the continuing validity of Stroud.
In Hendrickson, for instance, we held the police had to obtain a warrant to search the impounded vehicle of an arrestee who was also in prison at the time on a work release program, distinguishing Stroud because there were no exigent circumstances. Hendrickson was not in his vehicle at the time of his arrest, and his case was therefore unlike the Stroud circumstances. In Johnson, we upheld Stroud in declaring the sleeping compartment of a tractor-trailer was part of the passenger compartment of the vehicle, and therefore subject to search under the reasoning of Stroud, Johnson, 128 Wash.2d at 449, 909 P.2d 293.[3]
Despite our inconsistent, broadly fluctuating application of the search incident to arrest exception over the last 100 years, we have recognized a distinct article I, section 7 privacy interest for a vehicle passenger who is not the arrestee. See State v. Kennedy, 107 Wash.2d 1, 12, 726 P.2d 445 (1986); State v. Mendez, 137 Wash.2d 208, 970 P.2d 722 (1999).
In the present case, we should take the opportunity to delineate the proper scope of a search incident to arrest under article I, section 7 of our Constitution. While we are mindful of federal precedent, we are not *90 controlled by it. We must properly balance the privacy interests of drivers and passengers, as our State Constitution directs, and the legitimate needs of law enforcement officers for a clear rule on conducting searches that enables them professionally and safely to execute their duties.
I believe the best approach to this issue is to confine the arrest exception under article I, section 7 to its historical rationale. An officer, incident to arrest, may search the person of the accused and the area within the control of the accused for weapons. In the case of automobiles, this means the search encompasses any place within the interior of the vehicle accessible to the accused, as Stroud directs. An officer may search any unlocked item found within the vehicle's interior space for weapons, without regard to fine distinctions as to their ownership. Of course, this does not authorize an officer to open matchboxes and the like, as it is unreasonable to believe weapons will be found there.
Under certain circumstances nonarrested passengers may pose a threat to officers or may thwart officers' efforts at law enforcement in an arrest situation. But these exigencies can be addressed under Mendez or pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, if the officers encounter contraband while conducting a weapons search incident to the arrest, they may seize such contraband as it is in plain view. State v. Bustamante-Davila, 138 Wash.2d 964, 983 P.2d 590, 599 (1999) ("Under the plain view doctrine, an officer must: (1) have a prior justification for the intrusion; (2) inadvertently discover the incriminating evidence; and (3) immediately recognize the item as contraband." (quoting State v. Myers, 117 Wash.2d 332, 346, 815 P.2d 761 (1991))).
In the final analysis, a more carefully drawn exception to the requirement of a warrant for searches incident to arrest honors the constitutional mandate of a warrant for searches and avoids the practical concerns highlighted by Chief Justice Guy and Justice Alexander in their opinions. Law enforcement has the benefit of a bright-line rule. Officers need not make fine distinctions about who owns what item if the item is within the passenger compartment of the vehicle so long as the search is for weapons. At the same time, the privacy interest of the occupants we recognized in Stroud when we prevented searches of closed containers and in Mendez when we noted privacy interests of vehicle passengers is preserved.
ALEXANDER, J. (concurring in part, dissenting in part).
I agree with the result reached by the majority in State v. Jines, No. 66522-2, and State v. Hunnel, No. 66523-1. I write separately, however, because I believe that the majority uses language which is overbroad in regard to the application of the rule we established in State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986). In addition, based upon the factual record before us, I dissent from the majority's decision in State v. Parker, No. 66147-2, to the effect that the methamphetamines found in Parker's purse should be suppressed.
The majority concludes that if an officer "know[s] or should know certain containers within [a] vehicle belong to nonarrested occupants, such containers may not be searched absent an independent, objective basis to believe the containers hold a weapon or evidence." Majority op. at 83 (emphasis added). While I agree with the majority's conclusion that if officers of the law "know" that a container belongs to a passenger it may not be searched incident to the arrest of the driver, I disagree that the officers should be similarly inhibited if they merely "should know." I reach that conclusion because the "should know" feature of the majority opinion injects a subjective standard that runs counter to the rationale we set forth in Stroud. See Stroud, 106 Wash.2d at 151, 720 P.2d 436 ("A highly sophisticated set of rules... requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be `literally impossible of application by the officer in the field.'") (citations omitted). Unfortunately, under the majority's holding police officers would be required to draw exactly the types of "subtle nuances and hairline distinctions" which Stroud decries. Notwithstanding my concern with the broad language of the majority opinion, however, I *91 agree that Hunnel's and Jines's convictions should be reversed. In both of those cases the officers knew that the items searched belonged to the nonarrested passengers.
In regard to Parker, I dissent. I do so because, in my view, the search of the passenger's purse was lawful notwithstanding the fact that the officers knew that the purse belonged to the passenger, Parker, and not to the driver, Thomas. This conclusion follows from the fact that the police may, after arresting a person, search the area that was within the arrestee's immediate control prior to the arrest. See, e.g., State v. Johnson, 128 Wash.2d 431, 451, 909 P.2d 293 (1996) ("The scope of a search incident to a lawful arrest includes a search of the immediately surrounding area or the area within the `immediate control' of the person arrested.") (citation omitted); State v. Boyce, 52 Wash.App. 274, 277, 758 P.2d 1017 (1988) (stating that pursuant to a search incident to an arrest, the police may search "the area within the arrestee's immediate control."). The record indicates that Thomas admitted to an officer that the large sum of cash that the officer had observed lying on top of Parker's purse had been placed there by him. Accordingly, it follows that because Thomas had access to Parker's purse, the purse was within his "immediate control," and was subject to search by the arresting officer. Consequently, I would uphold the Court of Appeals' decision affirming the trial court's denial of Parker's motion to suppress and her conviction.
GUY, C.J. (dissenting).
The safety of police officers in the field, as well as the public's right to effective, confident law enforcement, requires a rule that provides police officers with a clear guide for recognizing the boundaries of a constitutional search of a vehicle incident to the arrest of the vehicle's driver or passenger. Because the majority opinion creates a rule that hinders the right of the public to be assured that law enforcement officers will be able to confidently and safely do their jobs, I dissent.
In my view, established principles of state constitutional law dictate that we affirm the three trial courts and the Court of Appeals in these cases. Rather than apply article I, section 7 law as it has developed over the past half century, the majority has resurrected the holding of State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983), overruled by State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986). The majority announces the same rule which we held unworkable and which we overruled in 1986, just two and one-half years after it was first articulated in Ringer.
The three cases before us do not involve the search of the persons of nonarrested passengers. The searches were of vehicles, and the containers within the vehicles, incident to the arrest of the driver. In each of the three cases before us, the trial courts and the Courts of Appeals allowed the searches, pursuant to established state and federal constitutional law.
In State v. Hunnel, 89 Wash.App. 638, 949 P.2d 847 (1998), a Kitsap County deputy sheriff, while on routine patrol, observed a car driven by a person for whom the deputy knew there was an outstanding warrant of arrest. The deputy stopped the car and arrested the driver, John Hunnel, pursuant to the warrant and handcuffed him. Mr. Hunnel's wife, Anna Hunnel, was a passenger in that car. When the deputy asked Ms. Hunnel for her identification to determine if she could be allowed to drive the car away, she retrieved her ID from her purse, which was on the passenger side floorboards. The deputy asked Ms. Hunnel to leave everything in the car and to step out of the car so that he could check the interior of the vehicle. Ms. Hunnel left her purse inside the car when she got out of the car. The deputy then searched the passenger compartment of the car, including Ms. Hunnel's purse. He found a match holder which contained a white powdery substance.
Ms. Hunnel was charged with possession of methamphetamine. She moved to suppress the evidence, arguing that the deputy did not have the right to search her purse incident to the custodial arrest of the driver of the car. The State acknowledged that the *92 searching officer knew the purse belonged to Anna Hunnel. The court denied Ms. Hunnel's motion to suppress, reasoning that where the driver has been arrested, the car can be searched incident to a lawful arrest, including all containers in the vehicle and that the police should not have to conduct an investigation about who owns what in the car. Ms. Hunnel was convicted of one count of possession of a controlled substance after a bench trial on stipulated facts.
She appealed the suppression decision to the Court of Appeals, which held that the purse was a searchable container in the car and affirmed the conviction. The Court of Appeals considered this Court's decision in State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986), and the Supreme Court's decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and concluded that neither case limited the search of containers in cars to those owned by the arrested person. The Court of Appeals concluded that requiring the police to ascertain the ownership of containers in a vehicle would so blur the Belton-Stroud "bright-line" rule as to make it unworkable. Reasoning that all unlocked containers in the passenger compartment of a car are accessible to an arrestee, the Court of Appeals concluded that a search incident to the custodial arrest of an occupant may include all containers in the car. State v. Hunnel, 89 Wash. App. 638, 949 P.2d 847. We accepted review and consolidated the case With State v. Parker, No. 66147-2 and State v. Jines, No. 66522-2.
In Ms. Parker's case, a Washington State Patrol trooper stopped a vehicle for speeding which was driven by Tim Thomas and in which Deborah Parker was a passenger. A records check revealed that Mr. Thomas' driving privileges had been revoked as a habitual traffic offender. The trooper arrested Mr. Thomas for first degree driving while license revoked, searched his person and placed him in the back of the patrol car. Another trooper joined the scene of the arrest shortly after the stop. The trooper noticed an open container of alcohol and what he described as a "felony forest" consisting of a large number of Christmas-tree-shaped air fresheners in the passenger area hanging from the vents and a hand-held scanner under the arm rest.
After Mr. Thomas was arrested, Ms. Parker was asked to step out of the vehicle so her sobriety could be checked to determine if the vehicle could be released to her. Ms. Parker stepped out of the car and passed a Breathalyzer test. The trooper observed an open purse on the passenger seat of the car with a large amount of cash lying loosely on top. Ms. Parker told the trooper that the cash was from the sale of a vehicle which she had sold. When the trooper separately asked Mr. Thomas about the money, Mr. Thomas responded that it was his and stated he placed it on Ms. Parker's purse after the traffic stop. Ms. Parker then admitted that she had lied and that the money belonged to Mr. Thomas. The trooper searched the passenger compartment of the car, including Ms. Parker's purse, in which he found a baggie in a coin purse which later tested positive for methamphetamine. Ms. Parker was arrested and charged with unlawful possession of a controlled substance.
Ms. Parker moved to suppress the evidence found in her purse. The trial court held that because there was a lawful arrest of the driver of the car, the troopers could search the car and the unlocked contents of any container in the car. Ms. Parker appealed, and the Court of Appeals affirmed the trial court's denial of the motion to suppress. State v. Parker, 88 Wash.App. 273, 944 P.2d 1081 (1997). Citing to authority from California, Colorado, Florida, and Wisconsin, the Court of Appeals concluded that the bright-line rule of Stroud and Belton applied with equal force to all unlocked containers found in the passenger compartment of a vehicle subsequent to a lawful custodial arrest.
In the third case, that of Defendant Jines, an Olympia police officer stopped a vehicle for a traffic violation and discovered that the driver of the car was driving with a suspended driver's license. The driver was arrested and placed in the patrol car. The officer noticed that one of the passengers, Steven Jines, was not wearing a seat belt and requested identification. Mr. Jines retrieved his identification from a jacket on the center console between the two front seats. The *93 officer asked the two passengers to step out of the vehicle, explaining that he was going to conduct a search of the vehicle incident to the arrest of the driver. Mr. Jines and another passenger stepped out of the car. Mr. Jines testified that the officer told him and the passenger in the back seat to exit the vehicle and not to remove anything from the car when they got out. The officer searched the passenger compartment of the car, including the jacket in the front seat. In the jacket he found two boxes containing bags of what he suspected were methamphetamine. The officer asked Mr. Jines if the jacket was his, and he said that it was. The officer asked Mr. Jines if the powder in the baggies in the jacket were methamphetamine and Mr. Jines indicted that it was.
Mr. Jines was charged with unlawful possession of a controlled substance. He moved to suppress the drugs found during the search of his jacket. The trial court held that the current status of the law was that the officer had the full authority to search the passenger compartment and anything that was in it, including the defendant's jacket. The Court of Appeals, in an unpublished opinion, upheld Mr. Jines' conviction, finding the search was proper. State v. Jines, No. 20454-1-II (Wash.Ct.App. Jan. 23, 1998).
The defendants argue that the searches of their belongings violated both the Fourth Amendment and Wash. Const. art. I, § 7. In order to understand the development and construction of our state constitution as it relates to the legal issue involved in these three cases, it is necessary to first review the analogous law under the federal constitution.
The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." While a warrantless search is presumed unreasonable, there are a number of long-standing and well-established exceptions to the warrant requirement. Included among those exceptions is the search incident to a lawful arrest. See State v. Johnson, 128 Wash.2d 431, 451, 909 P.2d 293 (1996) (citing Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). This court is not asked in these cases whether probable cause to search exists; probable cause is irrelevant to a search incident to a lawful custodial arrest. See New York v. Belton, 453 U.S. at 461, 101 S.Ct. 2860. The rationale for a search incident to an arrest rests upon the need to remove weapons which might be used by the person arrested and the need to prevent destruction or concealment of evidence. Johnson, 128 Wash.2d at 451, 909 P.2d 293 (citing Chimel, 395 U.S. at 763, 89 S.Ct. 2034).
The Fourth Amendment usually limits the permissible scope of a warrantless search incident to arrest to the area within the arrestee's immediate control. Chimel, 395 U.S. at 763, 89 S.Ct. 2034. However, for automobile searches a search incident to arrest encompasses the entire passenger compartment and any container, locked or unlocked, found in that area. Belton, 453 U.S. at 460, 101 S.Ct. 2860. In Belton, the Court adopted a bright-line test regarding the scope of a search of an automobile incident to the lawful arrest of an occupant. The Court explained that the Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. Belton, 453 U.S. at 458, 101 S.Ct. 2860 (quoting Wayne R. LaFave, "Case-By-Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma, 1974 S. CT. REV. 127, 141).
The Court articulated the need to announce a straightforward rule, easily applied, and predictably enforced. The Court rejected the suggestion that there must be litigated in each case the issue of whether there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. Belton, 453 U.S. at 459, 101 S.Ct. 2860. Given this holding, the argument that a given search was improper because there was no evidence of record that the officer feared possible danger to himself or that there was any indication that the officer believed contraband or evidence *94 to be present is without merit. Staten v. United States, 562 A.2d 90 (D.C.1989).
Recently the Supreme Court reiterated that "the authority to conduct a full field search as incident to an arrest was a `bright-line rule,' which was based on the concern for officer safety and destruction or loss of evidence, but which did not depend in every case upon the existence of either concern." Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) (citing United States v. Robinson, 414 U.S. 218, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973)).
The Supreme Court defined the issue in Belton as "[w]hen the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" Belton, 453 U.S. at 455, 101 S.Ct. 2860. The Belton Court concluded:
While the Chimel case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." Chimel, 395 U.S., at 763 [89 S.Ct. 2034]. In order to establish the workable rule this category of cases requires, we read Chimel's definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.
Belton, 453 U.S. at 460, 101 S.Ct. 2860 (emphasis added) (alteration in original) (footnotes omitted). The Court construed the term "container" to mean "any object capable of holding another object." Belton, 453 U.S. at 460 n. 4, 101 S.Ct. 2860. Under the reasoning ofBelton, that any container inside the car at the time of the arrest was within the reach of the arrestee, it follows that the police should be allowed to search all such containers regardless of ownership of the container. If a container is accessible to an arrestee, it is accessible regardless of ownership. The Belton Court endorsed the view that Fourth Amendment protections "`can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.'" 453 U.S. at 458, 101 S.Ct. 2860 (quoting LaFave, supra, at 142).
In broadening the scope of a Chimel search, or at least defining it explicitly in the category of vehicle searches, the Belton conclusion is congruent with prior federal precedent giving lesser protections when a vehicle is involved. The United States Supreme Court has reasoned that the diminished expectation of privacy in an automobile, combined with the exigent circumstance of its mobility, underlies the less rigorous warrant requirements that it applies to automobile searches. Stroud, 106 Wash.2d at 168 n. 10, 720 P.2d 436 (citing South Dakota v. Opperman, 428 U.S. 364, 367-68, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)); see also Rakas v. Illinois, 439 U.S. 128, 148, 149 n. 15, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Johnson, 128 Wash.2d at 453-54, 909 P.2d 293 (citing Supreme Court cases holding that the privacy interests of persons traveling in vehicles upon public thoroughfares are substantially less than those that attach to fixed dwellings).
Additionally, the Supreme Court has recently held that a police officer who has probable cause to search a car, believing it to *95 contain contraband, may constitutionally search the small containers within a passenger's closed purse. Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 1302, 143 L.Ed.2d 408 (1999) (passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport).
The historical relationship between the Fourth Amendment cases and decisions under our state constitution on vehicle searches incident to arrest has been one of consistency in rationale and in purpose.
The privacy guarantee in our state constitution, Const. art. I, § 7, provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Under our state constitution, the inquiry focuses on "`those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" State v. Rose, 128 Wash.2d 388, 400, 909 P.2d 280 (1996) (quoting State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984)); State v. White, 135 Wash.2d 761, 768, 958 P.2d 982 (1998). Article I, section 7 may provide greater protection against warrantless searches of automobiles than the Fourth Amendment. State v. Hendrickson, 129 Wash.2d 61, 69-70 n. 1, 917 P.2d 563 (1996) (citing Johnson, 128 Wash.2d at 447, 909 P.2d 293); White, 135 Wash.2d at 768-69, 958 P.2d 982; State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707 (1989); State v. Patterson, 112 Wash.2d 731, 774 P.2d 10 (1989); State v. Stroud, 106 Wash.2d 144, 720 P.2d 436.
While our constitution contains a guaranty of privacy, article I, section 7 prohibits only "unreasonable" invasions of privacy. See Myrick, 102 Wash.2d at 510, 688 P.2d 151; State v. Kennedy, 107 Wash.2d 1, 726 P.2d 445 (1986). A warrantless search under article I, section 7 is per se unreasonable unless it falls within one of the exceptions to the warrant requirement. A search incident to a lawful arrest is one well-established exception and is based upon the need to prevent destruction of evidence and on the need to locate weapons. Johnson, 128 Wash.2d at 447, 909 P.2d 293; Stroud, 106 Wash.2d at 152, 720 P.2d 436; State v. Smith, 119 Wash.2d 675, 678, 835 P.2d 1025 (1992). The only issue before us in these consolidated cases is the permissible scope of the search of a vehicle following a lawful custodial arrest of the driver, in light of officer safety concerns, the possible hiding of evidence of crime, or the potential destruction or disappearance of evidence.
When considering the privacy rights available under article I, section 7, we have focused primarily on preexisting Washington law concerning the same factual situation. See State v. Mendez, 137 Wash.2d 208, 218-19, 970 P.2d 722 (1999); State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998). As we recently explained, we have generally discussed warrantless searches of vehicles under article I, section 7 in the context of a search incident to arrest. We have been sensitive to the reality that the passenger compartment of a vehicle may harbor weapons for an occupant, and to the exigencies that an occupant could easily destroy evidence in the vehicle while a warrant is being sought, or even drive the vehicle away. Hendrickson, 129 Wash.2d at 73, 917 P.2d 563 (citing Johnson, 128 Wash.2d 431, 909 P.2d 293); Fladebo, 113 Wash.2d 388, 779 P.2d 707; Patterson, 112 Wash.2d 731, 774 P.2d 10; Stroud, 106 Wash.2d 144, 720 P.2d 436; State v. Gluck, 83 Wash.2d 424, 518 P.2d 703 (1974).
In a long line of older cases, we have routinely allowed searches of automobiles incident to a lawful arrest. See State v. Hughlett, 124 Wash. 366, 369-70, 214 P. 841 (1923), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Deitz, 136 Wash. 228, 230-31, 239 P. 386 (1925), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Miller, 151 Wash. 114, 275 P. 75 (1929), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Olsen, 43 Wash.2d 726, 728, 263 P.2d 824 (1953); State v. Cyr, 40 Wash.2d 840, 843, 246 P.2d 480 (1952), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240; State v. Jackovick, 56 Wash.2d 915, 916-17, 355 P.2d 976 (1960), overruled by Ringer, 100 Wash.2d 686, 674 P.2d 1240.
However, in 1983, in State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240, this court held that absent actual exigent circumstances, a *96 warrantless search of a suspect's vehicle was impermissible. Relying on article I, section 7, we held that a warrantless search after an arrest from a vehicle is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape, and to avoid destruction of evidence by the arrestee of the crime for which he or she was arrested. The Ringer court viewed the "totality of circumstances" surrounding the arrest and decided that the burden was on the police officers to show that the exigencies of the particular situation required a warrantless search. Ringer, 100 Wash.2d at 701, 674 P.2d 1240. This was necessarily a case-by-case analysis. However, only two and one-half years later we found it necessary to overrule our Ringer decision. State v. Stroud, 106 Wash.2d 144, 720 P.2d 436. Justice Durham's concurring opinion in Stroud points out that Ringer was the first case to restrict, based on state constitutional grounds, the automobile search incident to arrest doctrine we had applied for nearly 60 years since State v. Hughlett, 124 Wash. 366, 214 P. 841. Stroud, 106 Wash.2d at 158, 720 P.2d 436 (Durham, J., concurring in the result). The majority opinion today restates the Ringer rule, effectively overruling Stroud and the many cases that have followed its reasoning.
Stroud involved the search of an automobile following the arrest of the two occupants of the car. After the arrest of the occupants for theft, the police searched the entire passenger compartment of the car and found weapons and illegal drugs. The defendants argued that we should reverse their convictions because the evidence seized in the warrantless search of the automobile should have been suppressed. We affirmed the convictions and defined the scope of the search of a vehicle which is allowed incident to a lawful arrest. In Stroud, we explained that the Ringer holding made it virtually impossible for officers to decide whether or not a warrantless search would be permissible following an arrest of an occupant of a vehicle. We explained that the case-by-case analysis was too much of a burden to put on a police officer who must make a decision to search a vehicle with little more than a moment's reflection.
In Stroud, we reviewed then-recent federal cases involving car searches and explained that "[t]he effect has been to make lawful a warrantless search of a passenger compartment of a car, and all containers (luggage, paper bags, etc.) inside it, pursuant to a lawful custodial arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)." Stroud, 106 Wash.2d at 147, 720 P.2d 436 (emphasis added). The rationale for these federal decisions was that "the exigencies of the situation surrounding a car search pursuant to a custodial arrest outweighed whatever privacy interests the driver and passengers had in the articles and containers in the car." Stroud, 106 Wash.2d at 147, 720 P.2d 436 (citing Belton, 453 U.S. at 461, 101 S.Ct. 2860). These exigencies included the danger that the suspect could destroy the evidence in the car, the car could be driven away, or the suspect could grab a weapon secreted somewhere in the passenger compartment. Stroud, 106 Wash.2d at 147, 720 P.2d 436. While recognizing that article I, section 7 guarantees privacy rights beyond those found in the federal constitution, we nevertheless concluded that we should follow the clear and definite rule of Belton, with the single exception of locked containers in the passenger compartment. Stroud, 106 Wash.2d at 150-52, 720 P.2d 436.
We rejected the case-by-case approach of Ringer and announced a bright-line rule for the permissible scope of a warrantless search of an automobile incident to a custodial arrest under article I, section 7:
During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.
Stroud, 106 Wash.2d at 152, 720 P.2d 436.
Neither Stroud nor Belton limits the search of containers to those owned by the arrested person. In establishing this bright-line *97 rule, we eliminated the question whether certain areas or objects were actually within the suspect's reach during the arrest from the vehicle. The reason we departed somewhat from the Belton rule, which allowed the search of even locked containers, was that by locking the container, the individual had shown he or she reasonably expected the contents to remain private and that, as a practical matter, the danger that the individual either could "destroy or hide evidence located within the container" or grab a weapon is minimized. Stroud, 106 Wash.2d at 152, 720 P.2d 436. The question in the present cases is whether, under this rationale, we should find it reasonable for an officer to search any unlocked container found in the car at the time of the stop and the arrest. The District of Columbia Court of Appeals has cogently explained:
In circumstances where the police stop a vehicle with multiple passengers and arrest one of them, the need for the police to discover either hidden weapons which could be turned upon them or evidence which could be destroyed is no less acute simply because a person other than the arrestee owns the "container" in which those items might be located. In fact, because of the number of people involved, the need may be greater. Third-party ownership of the auto or "containers" therein would not necessarily prevent the arrestee from gaining access to those items. It should not, therefore, bar the police from searching them in the same manner as if they were owned by the arrestee.
Staten, 562 A.2d at 92.
In light of the realities of a situation where an officer has arrested a driver or passenger of a vehicle, I find this reasoning sound. Even a container belonging to a nonarrested occupant of the car is accessible to the arrested person either to hide a weapon or to hide evidence. As noted above in the Parker case, the arrested driver put cash into the passenger's purse just prior to the officer stopping the car; he might just as easily have put a weapon or the evidence of a crime in that container. Often when a driver is arrested, the police will properly allow a passenger to drive the car away following the arrest. See State v. Simpson, 95 Wash.2d 170, 189, 622 P.2d 1199 (1980). In such circumstances, any evidence of crime secreted by the arrestee in a container owned by another person would be lost. In my view, it is reasonable that an arresting officer be allowed to search all unlocked containers in the passenger compartment of the vehicle. We have previously explained that an arrestee does not have to be in actual physical possession of an object for that object to be "within his control" for search-incident-to-arrest purposes. Rather, an object is within the control of an arrestee for the purpose of a search incident to an arrest as long as the object was within the arrestee's reach immediately prior to, or at the moment of, the arrest. Smith, 119 Wash.2d at 681-82, 835 P.2d 1025. The core holding of both Belton and Stroud is that all containers in the passenger compartment of a vehicle are considered to be within the control of an arrested occupant of that vehicle.
In Patterson, 112 Wash.2d at 735, 774 P.2d 10, we reiterated our Stroud rule and again explained that, in the situation where there was a search incident to an arrest, "concerns for the safety of officers and potential destructibility of evidence do outweigh privacy interests and warrant a bright-line rule permitting limited searches."
Until today, both this Court and the Court of Appeals have refused to blur the bright line we drew in Stroud. Johnson, 128 Wash.2d at 447-50, 909 P.2d 293; Fladebo, 113 Wash.2d at 395, 779 P.2d 707; Kennedy, 107 Wash.2d at 11-13, 726 P.2d 445; State v. Davis, 79 Wash.App. 355, 360-62, 901 P.2d 1094 (1995); State v. Cass, 62 Wash.App. 793, 816 P.2d 57 (1991). In Fladebo, following Stroud, we held: "the police can search the contents of the passenger compartment exclusive of locked containers or locked glovebox." 113 Wash.2d at 395, 779 P.2d 707. We held that a purse was not a locked container and did not fall within the Stroud exception. In our recent opinion in State v. Johnson, recognizing the lowered expectation of privacy that exists in vehicles, we held that the sleeper compartment of a tractor trailer truck was subject to search incident to the *98 arrest of the driver. Johnson, 128 Wash.2d at 449, 453-54, 909 P.2d 293. In Kennedy, we explained that it would be unreasonable to limit an officer's ability to assure his own safety, and we reiterated that we had allowed an officer to make a search of the passenger compartment to assure a suspect person in the car does not have access to a weapon within the suspect's or passenger's area of control. Kennedy, 107 Wash.2d at 13, 726 P.2d 445.
Both this Court and the United States Supreme Court have recognized that an officer conducting an investigative stop may be endangered not only by the suspect but by companions of the suspect as well. Kennedy, 107 Wash.2d at 11, 726 P.2d 445. The United State Supreme Court recently emphasized the danger to police officers when they make a vehicle stop:
Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. Federal Bureau of Investigation, Uniform Crime Reports: Law Enforcement Officers Killed and Assaulted 71, 33 (1994)....
. . . .
... It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.
Maryland v. Wilson, 519 U.S. 408, 413-14, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).
The majority relies on cases involving the searches of locations pursuant to a premises warrant and to cases where searches occurred incident to arrest in a home or other stationary setting. See, e.g., State v. Broadnax, 98 Wash.2d 289, 654 P.2d 96 (1982), abrogated on other grounds by Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In my view such cases are inapposite, as both the United States Supreme Court and this Court have found it necessary to establish special rules to define the scope of the search incident to a lawful arrest when the arrest occurs in a motor vehicle. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768; Stroud, 106 Wash.2d 144, 720 P.2d 436; Johnson, 128 Wash.2d 431, 909 P.2d 293. The realities of a roadside vehicle search are entirely different from a premises search where authorities can take a number of officers to serve the warrant and can control the search site. In an arrest from a vehicle by the side of the road, a single officer may be attempting a custodial arrest of an individual from a vehicle containing a number of the arrestee's companions.
We have repeatedly held that there is a difference in the right to privacy in vehicles and in other places. State v. Cantrell, 124 Wash.2d 183, 190 nn.17-18, 875 P.2d 1208 (1994) (citing cases); Ferrier, 136 Wash.2d at 112, 113 n. 7, 120, 960 P.2d 927; Johnson, 128 Wash.2d at 449, 909 P.2d 293. As noted, one of the legitimate goals of a search incident to a valid arrest is to locate evidence which an arrestee may have hidden just prior to the arrest. In the case of an arrest from a vehicle, police have a responsibility to consider reasonable alternatives before impounding an arrestee's vehicle, including whether the vehicle may be released to family or friends. Simpson, 95 Wash.2d at 189, 622 P.2d 1199. Therefore, officers often properly allow a passenger of the vehicle to drive the car away after the driver has been arrested. Unlike a search of a home, where the officers often have time to secure a warrant following the arrest of a resident, police often must immediately search the car of an arrestee incident to the arrest or lose the vehicle which may contain evidence of a crime. Additionally, if an officer is going to allow a companion of the arrested individual to drive the vehicle away, the officer should have the opportunity to search containers to ensure that a weapon will not be turned on the officer.
Like the Belton Court, we have, until today, rejected a case-by-case application of the Chimel rule to situations involving vehicles in favor of a standardized procedure governing all cases. I would continue to apply this well settled law and hold that under article I, section 7, when a police officer has made a lawful custodial arrest of the *99 occupant of a vehicle, he or she may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle including the contents of any unlocked containers found in the passenger compartment.
In my view police officers in the field should not be required to ascertain the ownership of each container or piece of clothing found in a vehicle in order to search it when the driver of the vehicle has been lawfully arrested. Hence, I would affirm the Court of Appeals decisions in all three cases under review.
DOLLIVER, J. Pro Tem., concurs.
NOTES
[1] The State cites the United States Supreme Court's recent decision in Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) as additional authority. There, the Supreme Court held "that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." Houghton, 119 S.Ct. at 1304. Here, there was no probable cause to search the car, much less the individual belongings of the passengers. Thus, Houghton would not even control a Fourth Amendment analysis. Compare Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) (concern for officer safety and destruction of evidence does not alone justify full field type search in the absence of arrest or probable cause to search). In any event, Houghton does not control the outcome under article I, section 7 and we decline to adopt its rationale.
[2] Once this court has conducted an analysis under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), and has determined a provision of the state constitution independently applies to a specific legal issue, in subsequent cases it is unnecessary to repeat a Gunwall analysis of the same legal issue. State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998). It is already well established that article I, section 7 of our state constitution provides to individuals broader protection against search and seizure than does the Fourth Amendment. White, 135 Wash.2d at 769, 958 P.2d 982. Therefore, no Gunwall analysis is needed in this case because we apply established principles of state constitutional jurisprudence. See White, 135 Wash.2d at 769, 958 P.2d 982.
[3] For a thorough discussion of the search incident to arrest exception see State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983) (tracing common law history of the exception and its development under Washington law), overruled in part on other grounds by State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986).
[4] While we relied on federal precedent in Broadnax, we specifically held the search at issue was invalid under article I, section 7. Broadnax, 98 Wash.2d at 296, 304, 654 P.2d 96.
[5] Even assuming a patdown for weapons would have been justified in these cases, the scope of the searches here was impermissible. We have repeatedly recognized that a patdown to ensure officer safety may not be turned into a cursory search for weapons or be used to search for evidence of an independent crime. Broadnax, 98 Wash.2d at 296-97, 654 P.2d 96; Hudson, 124 Wash.2d at 112, 874 P.2d 160; State v. Hobart, 94 Wash.2d 437, 447, 617 P.2d 429 (1980); State v. Allen, 93 Wash.2d 170, 172-73, 606 P.2d 1235 (1980).
[6] If there was an articulable basis to believe contraband had been hidden in the passenger's belongings, this might provide the "further predicate" necessary to conduct a search for that contraband. See Houghton v. State, 956 P.2d 363 (Wyo.1998) (passenger possessions may be searched where there is reason to believe contraband was concealed within the personal effect immediately prior to the search), rev'd, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).
[7] We disagree with the United States Supreme Court's rejection of the Wyoming test. Article I, section 7 requires a particularized basis to search. Even if we did believe, which we do not, that vehicle passengers are often, although not inevitably, "engaged in a common [criminal] enterprise with the driver," Houghton, 119 S.Ct. at 1302, we could not constitutionally adopt a rule based on the "generality" of this assumption. We agree with Justice Stevens that a search of a passenger's purse or other personal effect is a serious intrusion. Houghton, 119 S.Ct. at 1305 (Stevens, J., dissenting). We also agree with Justice Stevens that "a rule requiring a warrant or individualized probable cause to search passenger belongings is every bit as simple as the Court's rule; it simply protects more privacy." Houghton, 119 S.Ct. at 1306 (Stevens, J., dissenting). This reasoning parallels the heightened protection of privacy under article I, section 7. Under our precedent, a passenger's privacy interest is independent of the driver's and is not diminished merely upon stepping into an automobile with others.
[8] The money officers saw in Ms. Parker's purse was not contraband and did not provide cause to search.
[1] Compare Chimel, 395 U.S. at 759, 89 S.Ct. 2034 (search of area in immediate control of arrestee is strictly tied to and limited by the necessities at time of arrest, but "`there must be something more in the way of necessity than merely a lawful arrest'") (quoting Trupiano, 334 U.S. at 708, 68 S.Ct. 1229), with Robinson, 414 U.S. at 226, 235, 94 S.Ct. 494 (search of person of arrestee is not tied to or limited by exigencies of arrest, but "the fact of lawful arrest" establishes "an affirmative authority to search").
[2] An annotator was mildly critical of the Evans holding: "The court apparently did not consider the additional fact that the defendant was taken to the police station before his apartment was searched." V.G. Lewter, Annotation, Modern Status of Rule as to Validity of Nonconsensual Search and Seizure Made Without Warrant After Lawful Arrest as Affected by Lapse of Time Between, or Difference in Places of, Arrest and Search, 19 A.L.R.3d 727, 805 (1968).
[3] In State v. White, 135 Wash.2d 761, 958 P.2d 982 (1998), we discussed the scope of a warrantless inventory search of a validly impounded vehicle, ultimately holding the search of the trunk, which the police gained access to by depressing a button in the glove compartment, was improper under the inventory search rules set forth in State v. Houser, 95 Wash.2d 143, 622 P.2d 1218 (1980). White, 135 Wash.2d at 771, 958 P.2d 982.