28 P.3d 762 (2001)
STATE of Washington, Respondent,
v.
Christina VRIELING, Petitioner.
No. 68672-6.
Supreme Court of Washington, En Banc.
Argued October 17, 2000.
Decided August 9, 2001.
*763 Washington Appellate Project, Oliver Davis, Seattle, for Petitioner.
James Krider, Snohomish County Prosecutor, Karen Moore, Deputy, Everett, for Respondent.
MADSEN, J.
Petitioner Christina Lyn Vrieling contends that the search, incident to her arrest, of the motor home she was driving violated article I, section 7 of the Washington State Constitution. Therefore, she maintains, evidence found within a zippered cushion in the living area of the vehicle must be suppressed. We conclude that under State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986) and State v. Johnson, 128 Wash.2d 431, 909 P.2d 293 (1996), the search was constitutional. We affirm the Court of Appeals.

Facts
The parties have stipulated to facts contained in police reports. The reports, with two additional facts clarified by the trial court, indicate that on the afternoon of July 29, 1997, police dispatch advised that a vehicle prowl had occurred in a store parking lot. Dispatch described the suspect, said that he and a female companion had left in a white Winnebago motor home, and gave the license number of the Winnebago. Shortly thereafter, Snohomish County Deputy Cervarich *764 saw the Winnebago driving well under the speed limit and swerving over the fog line on the highway. He stopped the vehicle and asked for identification from the driver, later identified as Christina Vrieling. She gave a false name and two different false birth dates. Cervarich was unable to find a record of a driver's license using this information in Washington and, when Cervarich told the driver this, she then said she had not had a license in five years and her last license was either from Colorado or Montana. Dispatch checked and found no record in either state.
During this time, Deputy Cervarich returned to his vehicle trying to verify information that Vrieling provided. While he was there, Vrieling left the driver's seat, walked to the back of the motor home, and entered the bathroom.
Unable to verify any information provided by Vrieling, Cervarich arrested her for driving without a valid license and placed her in his patrol car. He then had the passenger in the vehicle, who also gave false information but was later identified as Christina's husband, step out of the Winnebago while Cervarich searched it. Cervarich found a loaded pistol with a full magazine along with a second magazine inside a zipped cushion in the back of the Winnebago. Dispatch informed Cervarich that the pistol had been reported stolen. Cervarich arrested Mr. Vrieling for possession of a stolen firearm.
Later at the police station, Christina Vrieling said that the gun was hers and she used it for target practice. Once she admitted her true identity, a criminal history check showed she had a previous felony conviction. Vrieling was charged with second degree unlawful possession of a firearm.
Prior to trial, she moved to suppress evidence of the pistol on the basis the search of the Winnebago was unconstitutional. The trial court denied the motion to suppress. Following a jury trial, Vrieling was convicted as charged. She appealed, arguing that the search was unconstitutional under article I, section 7, and that even if the search were permissible, Deputy Cervarich's search of the cushion exceeded the permissible scope of the search. The Court of Appeals affirmed. State v. Vrieling, 97 Wash.App. 152, 983 P.2d 1150 (1999). We granted Ms. Vrieling's petition for discretionary review. The only issue before us is whether the search of the motor home was unconstitutional under article I, section 7.

Analysis
Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." While warrantless searches are per se unreasonable, an exception to the warrant requirement allows for a warrantless search incident to arrest. Johnson, 128 Wash.2d at 446-47, 909 P.2d 293. The state bears the burden of proving an exception to the warrant requirement applies. Id. at 447, 909 P.2d 293.
In Stroud, this court held that "[d]uring the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." Stroud, 106 Wash.2d at 152, 720 P.2d 436. However, the officers may not unlock and search a locked container or locked glove compartment without obtaining a warrant. State v. Fladebo, 113 Wash.2d 388, 395, 779 P.2d 707 (1989); see Stroud, 106 Wash.2d at 152, 720 P.2d 436.[1]
*765 In establishing a bright line rule, the court in Stroud expressly overruled State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983), where the court had held that during a search incident to the arrest of the driver of a vehicle, the officer may search the person arrested and the area within his immediate control to remove any weapons the person might try to use to escape or resist arrest, and to avoid destruction of evidence of the crime for which the person is arrested. Ringer, 100 Wash.2d at 699-700, 674 P.2d 1240. The court in Ringer had concluded, under this holding, that in the two cases before it searches of the vehicles could not be justified as searches incident to arrest because the drivers had been handcuffed and placed in the back of patrol cars prior to the searches. Id. at 700, 674 P.2d 1240.
The rule in Stroud was specifically adopted to eliminate the need for a case by case assessment of when a warrantless search of an automobile incident to the arrest of the driver would be permissible, an approach deemed to be too burdensome for police officers in the field. Stroud and Fladebo acknowledge the greater privacy interest that this state's citizens have in their vehicles under article I, section 7 of the state constitution than under the Fourth Amendment, because locked containers within the vehicle are not subject to search. However, the bright line rule that the rest of the passenger area may be searched incident to arrest of the driver recognizes that "concerns for the safety of officers and potential destructibility of evidence do outweigh privacy interests and warrant a bright-line rule permitting limited searches." State v. Patterson, 112 Wash.2d 731, 735, 774 P.2d 10 (1989) (citing Stroud).[2]
In State v. Johnson, 128 Wash.2d 431, 909 P.2d 293 (1996), this court was asked to decide whether a sleeper compartment in the cab of a tractor trailer was part of the passenger compartment subject to search incident to the driver's arrest. The defendant in Johnson claimed that the sleeper was his temporary residence, and as such was not subject to search incident to arrest. We rejected this argument, noting that the sleeper compartment was not really a home. Id. at 448, 909 P.2d 293. We also observed that the defendant was asking this court to retreat from Stroud and "return to the confusion of Ringer." Id. We declined to do so. We noted that "[v]ehicles traveling on public highways are subject to broad regulations not applicable to fixed residences," which do not afford the defendant the "same heightened privacy protection in the sleeper that he would have in a fixed residence or home." *766 Id. at 449, 909 P.2d 293. Finally, we quoted with approval the reasoning of the Court of Appeals:
"[W]hen a home is located in a vehicle, in such a way as to make it readily accessible from the passenger compartment, the safety of law enforcement officers and the need for a bright-line rule militate against prohibiting officers from searching a sleeping area which is readily accessible from the passenger compartment."

Id. at 449, 909 P.2d 293 (quoting State v. Johnson, 77 Wash.App. 441, 447, 892 P.2d 106 (1995)).
Under Stroud and Johnson, search of a motor home like the one involved here falls within the search incident to arrest exception to the warrant requirement. Just as in the case of the tractor trailer in Johnson, motor homes traveling the highways are heavily regulated, as is true of all vehicles, and privacy interests are thus not as great as in a fixed residence.[3] Further, exactly as in Johnson, the back of this motor home was accessible to the driver, and therefore concerns about officer safety and the need for a bright line rule militate against prohibiting officers from searching the motor home. Also, as this court said in State v. Hendrickson, 129 Wash.2d 61, 73, 917 P.2d 563 (1996), in the context of searches incident to arrest the court has "been sensitive to the reality that the passenger compartment of a vehicle may harbor weapons for an occupant, and to the exigenc[y] that an occupant could ... drive the vehicle away." The same thing is true of a motor home.
Vrieling maintains in a Gunwall argument, however, that two statutes show that Washington law recognizes a heightened security and privacy interest in motor homes. Although the parties have engaged in a Gunwall analysis, State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), no Gunwall analysis is necessary. See, e.g., State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998) (it is well established that article I, section 7 provides greater protection in context of search and seizure than Fourth Amendment).
As to whether the two statutes cited by Vrieling indicate that Stroud should not be applied, we are not persuaded that the statutes compel a different analysis. The first statute provides that motor home prowling is a first degree felony offense. RCW 9A.52.095. However, as the State points out, this statute does not equate a motor home to a residence, because a violation of this statute is a class C felony while residential burglary is a class B felony. See RCW 9A.52.025. The second statute cited is RCW 46.61.519, which provides that consumption of alcohol in the living quarters of a motor home is allowable even where the motor home is traveling on the highways. (The statute does not allow the driver of the vehicle to possess or consume alcohol while on the highway.) However, under this statute alcohol may also be consumed in the back of a properly licensed limousine, the passenger compartment of which is clearly subject to the Stroud rule. RCW 46.61.519 does not favor a different rule in the motor home context.
While a different question may be presented when a motor home serves as a fixed residence, we conclude that when a motor home is used as a vehicle on the road, there is no constitutionally meaningful difference between a sleeper compartment in a tractor-trailer and the back of a motor home where both are accessible to the occupants. Indeed, this case highlights the need for applying the same rule as in Stroud and Johnson. Not only was the back of the motor home accessible to the defendant, but she actually went to the back of the motor home during the time Deputy Cervarich tried to verify her identity. Threat to officer safety is one of the reasons for the search incident to arrest exception. The holdings in Stroud and Johnson recognize that officer safety is a vital concern when vehicles are stopped and occupants arrested. Unfortunately, vehicle stops are often dangerous encounters, *767 and the search incident to arrest exception serves to lessen the danger without unduly infringing individual rights.[4]
The Court of Appeals is affirmed.
IRELAND, SMITH, BRIDGE, JJ., and GUY, J.P.T., concur.
JOHNSON, J. (dissenting).
The majority oversimplifies the analysis of this case and ignores the important constitutional principles our cases recognize. While the majority articulates the rule we have developed to analyze warrantless searches of automobiles, it erroneously applies that rule to motor homes. In doing so, the majority oversimplifies State v. Stroud's[1] bright line by failing to distinguish between an individual's reasonable expectation of privacy in a temporary residence and the expectation in a vehicle. This ignores an essential element of the Stroud balance: the expectation of privacy. The majority justifies its position as essential to promote effective law enforcement. However, the majority's expansion of Stroud will not achieve this end; it will curtail the privacy protections of Washington's citizens. A better balance is struck by limiting a motor home search incident to arrest to the area in the immediate control of the arrestee absent exigent circumstances. This balance acknowledges the residential qualities of a motor home without unduly burdening law enforcement or compromising officer safety. I respectfully dissent.
Under article I, section 7 of the Washington Constitution, we have established that warrantless searches are unreasonable per se. State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998) (citing State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996)). This is a strict rule. White, 135 Wash.2d at 769, 958 P.2d 982. Recognized exceptions to the warrant requirement are limited by the reason that called them into existence, not devices to undermine the warrant requirement enshrined in our state constitution. State v. Ladson, 138 Wash.2d 343, 356, 979 P.2d 833 (1999). Under this approach, the State bears a heavy burden to prove the warrantless search at issue falls within an exception. See State v. Johnson, 128 Wash.2d 431, 447, 909 P.2d 293 (1996).
When the place to be searched is a person's home, privacy interests are particularly strong and exceptions to the warrant requirement more narrowly drawn. "For this reason, `the closer officers come to intrusion into a dwelling, the greater the constitutional protection.'" State v. Young, 123 Wash.2d 173, 185, 867 P.2d 593 (1994) (prohibiting warrantless infrared surveillance of home) (quoting State v. Chrisman, 100 Wash.2d 814, 820, 676 P.2d 419 (1984)). See, e.g., State v. Chrisman, 100 Wash.2d 814, 676 P.2d 419 (finding an art. I, § 7 violation in the warrantless entry into a student dorm room); State v. Gunwall, 106 Wash.2d 54, 63, 720 P.2d 808 (1986) (prohibiting the warrantless obtaining of phone records or installation of a pen register); State v. Boland, 115 Wash.2d 571, 578, 800 P.2d 1112 (1990) (prohibiting warrantless search of curbside trash); State v. Ferrier, 136 Wash.2d 103, 115, 960 P.2d 927 (1998) (invalidating a consensual search of a home on the grounds the occupant was not informed of her right to refuse the search and, therefore, did not meaningfully consent). Warrantless entry into a home is unlawful when police could have kept the residence under surveillance until a warrant was obtained. State v. Werth, 18 Wash.App. 530, 571 P.2d 941 (1977).
Motor homes are more residential in nature than automobiles, so warrant exceptions should be limited by that nature. The Legislature has specifically acknowledged the residential aspects of a motor home. A motor home prowl is a felony offense. RCW 9A.52.095. A vehicle prowl is a gross misdemeanor. RCW 9A.52.100. Motor homes are *768 expressly excepted from vehicle prowling in the second degree. RCW 9A.52.100(1). Motor homes are defined as "motor vehicles originally designed, reconstructed, or permanently altered to provide facilities for human habitation, which include lodging and cooking or sewage disposal." RCW 46.04.305 (emphasis added). These statutes recognize that motor homes are not the same as automobiles and should be treated differently under the law.
The State has the heavy burden of showing an exception applies when arguing a warrant was not needed. Rather than requiring the State to satisfy this burden, the majority begins its analysis with the exception and asks Vrieling to demonstrate a motor home is more like a residence than the sleeping compartment of a tractor-trailer. This approach is constitutionally unsound. It shifts the State's burden to Vrieling, in effect requiring her to prove she should not be searched. The proper approach is to require the State to justify its failure to obtain a warrant. Here, the State has not shown the warrantless search falls under a narrow exception to the warrant requirement. Nor has the State demonstrated that securing the motor home for impound or applying for a warrant is particularly burdensome to police officers.
After incorrectly shifting the constitutional burden, the majority bases its reasoning on two dubious assumptions. First, the majority assumes a decision distinguishing the residential nature of motor homes will hinder effective law enforcement by requiring police officers to conduct a case-by-case analysis during traffic stops. Second, the majority assumes officer safety will be compromised under an approach more protective of privacy. Neither assumption passes scrutiny.
Case-by-case analysis will not increase if Stroud's bright line holding is not expanded to include motor homes. The number of traffic stops involving motor homes should not remotely approach the number of traffic stops to which the bright line distinction of Stroud still applies. Nor is it likely to do so. Motor homes do not flood the roads and highways of Washington. Nor are motor homes' residential characteristics likely to make them the vehicle of choice for criminal activity. The ease with which police were able to locate and secure the defendant's Winnebago in this case illustrates the weakness of this assumption.
The majority's second assumption that officer safety will be compromised, while not wholly without merit, fails because it disregards the reality of the circumstances involved in a search incident to arrest. While I agree the concern for officer safety is a factor justifying warrantless searches, the majority overemphasizes it, in the process forgetting the constitutional privacy interests at stake. The narrow exception to the warrant requirement due to concern for officer safety is somewhat a judicially created fiction in these circumstances. Searches incident to the arrest of the driverthe person most commonly posing the potential threatare generally conducted after the driver has been secured and is unable to threaten the officer. An expansion of the scope of a warrantless search based on officer safety is not justified after the threat to safety has been eliminated. The facts of Vrieling's case bear this out. Vrieling was handcuffed and placed in the patrol car during the search and could not pose a threat to the four officers involved in securing the scene and conducting the search.
Finally, the majority's holding fails to consider our existing jurisprudence regarding a police officer's ability to secure vehicles and residences. During a lawful traffic stop, police officers can order drivers and passengers of a vehicle to remain in or exit out of the vehicle or remain in a particular location within the vehicle in order to protect the officers themselves. State v. Mendez, 137 Wash.2d 208, 220, 970 P.2d 722 (1999). Police officers can perform limited searches of a premise in order to secure their own safety. See State v. Daugherty, 94 Wash.2d 263, 269, 616 P.2d 649 (1980); State v. Hill, 123 Wash.2d 641, 644-45, 870 P.2d 313 (1994). Police officers can also perform limited searches of a vehicle's driver incident to arrest to secure safety and evidence. See State v. Parker, 139 Wash.2d 486, 987 P.2d 73 (1999). These existing protections allow officers the ability to adequately secure residential *769 and nonresidential areas of a motor home during a traffic stop.
Here, the majority seizes on the fact the officer making the motor home stop was at greater risk when Vrieling walked to the back of the motor home and entered its bathroom. This is somewhat factually disingenuous because it does not recognize the fact that Vrieling had discussed with the officer her intention to use the bathroom. The majority further fails to mention that Vrieling was in custody when the search occurred and incapable of presenting a threat to the safety of the officers involved in the search or the officers securing the scene. However, even had the officer who made the initial stop not requested assistance, he would still have been able to adequately secure the motor home under either our Mendez or Daugherty holdings.
Exceptions to the warrant requirement are not analytical shortcuts that may be used to erode privacy protections. I would maintain the equilibrium created by Stroud. The better balance between the privacy interests of individuals and the need to search for weapons and easily destroyed evidence is struck by limiting a motor home search incident to arrest to the area in the immediate control of the arrestee. This recognizes the residential qualities of a motor home without creating a burden to law enforcement or compromising officer safety. The full search of the motor home should be suppressed and the Court of Appeals reversed.
ALEXANDER, C.J., concurs.
SANDERS, J. (dissenting).
Waiver of the warrant requirement for even "the area in the immediate control of the arrestee" (dissent, Johnson, J., at 769) is problematic in view of our constitution's express mandate that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7. Absent the "authority of law" represented by a search warrant,[1] we are left with the prospect of a warrantless search not even justified by exigent circumstances or a recognized common law exception. I would argue we need not trouble ourselves to invent a bright-line rule when our constitution already provides one.
NOTES
[1] In State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986), a majority (eight members of the court signing the lead and concurring opinions) held, as stated, that a search of the passenger compartment incident to arrest of the driver is permissible without a warrant under article I, section 7. The lead and concurring opinions disagreed, however, as to whether privacy interests should be considered. The lead opinion reasoned that the dangers to the officer and possible destruction of evidence must be weighed against whatever privacy interests the person arrested has in the articles in the vehicle. Stroud, 106 Wash.2d at 151-52, 720 P.2d 436 (Goodloe, J.). The lead opinion concluded that this weighing would not be done on a case by case basis, however, because it would be too difficult a rule for effective law enforcement and protection of individual rights. Accordingly, the lead opinion adopted a bright line rule allowing a search of the passenger compartment incident to arrest. The lead opinion added, however, that locked containers or glove compartments could not be opened and searched because the fact such articles are locked demonstrates that an individual reasonably expects the contents to remain private, and because the danger that an individual could hide or destroy evidence within the container or grab a weapon from it is minimized. Id. at 152, 720 P.2d 436.

The concurring opinion disagreed with the reasoning of the lead opinion, concluding that a lawful arrest provides the authority of law to search incident to arrest without a warrant, and privacy interests are thus irrelevant. Accordingly, the concurrence reasoned, locked containers could be searched along with the rest of the passenger compartment and unlocked containers or glove compartments. Id. at 164, 168-70, 720 P.2d 436 (Durham, J., concurring).
While the rationales of the two opinions differ, an eight-member majority clearly held that a search of the passenger compartment incident to arrest may be effected without a warrant during the arrest process and the time immediately subsequent to the arrest. There is, however, no majority opinion in Stroud on the issue of whether locked containers may be searched. The four justices signing the lead opinion believed that they could not, while the four justices signing the concurrence believed they could be. The remaining member of the court signed the lead opinion in result only, thus leaving the issue unresolved, since there was, in fact, no search of any locked container in the case.
The issue was resolved subsequently in State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707 (1989), when a majority of the court adopted the locked container rule proposed by the lead opinion in Stroud.
[2] Whether personal effects belonging to a passenger may be searched incident to arrest of the driver was addressed in State v. Parker, 139 Wash.2d 486, 987 P.2d 73 (1999). However, none of the analytical approaches proposed garnered a majority vote, though the lead opinion together with the narrowing concurring-dissenting opinion establish at a minimum that personal effects of a passenger, such as a purse, jacket, or container, known to the officers to belong to the passenger, may not be searched incident to the arrest of the driver if not in the "immediate control" of the driver. Id. at 518, 987 P.2d 73 (Johnson, J., plurality); id. at 517-19, 987 P.2d 73 (Alexander, J., concurring-dissenting).
[3] Motor homes are subject to all the traffic laws governing vehicles on the road. RCW 46.61.005. They are, in certain respects, more heavily regulated. See RCW 46.37.090(1) (additional equipment required); RCW 46.37.215(2) (hazard warning lamps); RCW 46.37.440(1) (flares and other warning devices); RCW 46.16.063 (additional licensing fees).
[4] Vrieling does not argue, as she did to the Court of Appeals, that even if a search of the motor home was constitutional, the search here was beyond the permissible scope. Nevertheless, we note that the search of the zipped cushion was not a search of a locked container, and a zipped, "unlocked" cushion can conceal a readily used weapon. See State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707 (1989) (driver's purse not a locked container; an unlocked purse can conceal a readily useable weapon).
[1] 106 Wash.2d 144, 720 P.2d 436 (1986).
[1] State v. Ladson, 138 Wash.2d 343, 348-52, 979 P.2d 833 (1999); City of Seattle v. Mesiani, 110 Wash.2d 454, 457, 755 P.2d 775 (1988).