152 P.3d 1048 (2007)
STATE of Washington, Respondent.
v.
Jesus David Buelna VALDEZ, Appellant.
State of Washington, Respondent,
v.
Reyes Rios Ruiz, Appellant.
Nos. 33647-2-II, 33653-7-II.
Court of Appeals of Washington, Division 2.
February 13, 2007.
*1050 Anne Mowry Cruser, Law Office of Anne Cruser, Vancouver, WA, Reed Manley Benjamin Speir, Attorney at Law, University Place, WA, for Appellant.
Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.
VAN DEREN, J.
¶ 1 In this consolidated case, Jesus David Buelna Valdez and Reyes Rio Ruiz challenge the search of their vehicle incident to Valdez's arrest on an outstanding felony warrant, arguing that the search exceeded the scope of a search incident to arrest under the Washington State Constitution, article 1, section 7. They argue that the trial court should have suppressed the evidence found in the vehicle during a search by a K-9 unit. We agree.
¶ 2 Ruiz also asserts that his statements alone are insufficient to convict him. We agree with Ruiz that the corpus delicti rule in Washington requires more than the accused's statements for conviction.
¶ 3 Accordingly, we reverse and remand with instructions to suppress the seized evidence.

FACTUAL BACKGROUND
¶ 4 On May 10, 2005, at approximately 7:45 PM, Detective Tom Dennison of the Clark County Sheriff's Department observed a Chevrolet Lumina minivan turning north onto N.E. 15th Avenue from an apartment complex parking lot in the Hazel Dell area of Clark County, Washington. Dennison stopped the vehicle because one of its headlights was not working. Valdez was driving and Ruiz was sitting in the front passenger seat. The vehicle stopped no more than 100 to 200 feet from a Vancouver School District school bus route stop.
¶ 5 Valdez presented his Washington State identification card in lieu of a driver's license. When Dennison conducted a records check, he discovered that Valdez had an outstanding felony warrant for his arrest. At 7:53 PM, Deputy Sean Boyle arrived to assist Dennison. Dennison arrested Valdez on the warrant, handcuffed him, and placed him in the back of the patrol car.
¶ 6 Dennison ordered Ruiz to step out of the vehicle and Boyle watched Ruiz while Dennison searched the interior of the vehicle. Dennison noticed that there were loose interior panels that appeared to have been tampered with. After hearing Valdez's statements and knowing that drugs are sometimes hidden behind plastic panels in vehicles and that panels are sometimes loose from being removed, the officers decided to call in Deputy Brian Ellithorpe and his certified narcotics detection dog. Ellithorpe and the dog arrived at 8:20 PM.
¶ 7 Ellithorpe directed the dog to search. The dog alerted to an interior vent in a driver's-side panel near the middle row of seats. Ellithorpe traced the vent to the third row of seats. There, he found a molded plastic cup holder. Ellithorpe popped the cup holder out and removed the underlying insulation. He found two packages containing a granular or crystalline substance under the insulation. Dennison then placed Ruiz under arrest. The result of a field test on the packages was positive for methamphetamine. The Washington State Patrol Lab found that the crystalline substance in each package was methamphetamine hydrochloride.

PROCEDURAL FACTS
¶ 8 The prosecutor charged Valdez and Ruiz with one count of unlawful possession of a controlled substancemethamphetamine hydrochloridewith intent to deliver within 1,000 feet of a school bus stop. Valdez and Ruiz filed unsuccessful motions to suppress the seized methamphetamine. They waived a jury trial and were both found guilty in a bench trial of the charged crimes. They appeal.

ANALYSIS
I. SEARCH INCIDENT TO ARREST
¶ 9 Valdez and Ruiz argue that the trial court erred in failing to suppress the methamphetamine because the search resulting in its seizure was a constitutionally impermissible warrantless search incident to a driver's arrest. We review the reasonableness *1051 of a search or seizure de novo. State v. Hoffman, 116 Wash.2d 51, 97-98, 804 P.2d 577 (1991).
¶ 10 As our Supreme Court has stated:
The [F]ourth [A]mendment to the United States Constitution provides that warrants may be issued only upon a showing of `probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' The Constitution requires that a detached and neutral magistrate or judge make the determination of probable cause.
Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched.
State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004) (citations omitted).
¶ 11 Absent an exception to the warrant requirement, a warrantless search is impermissible under both article 1, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution. See State v. Johnson, 128 Wash.2d 431, 446-47, 909 P.2d 293 (1996). Evidence seized during an illegal search may be suppressed under the exclusionary rule as "fruit of the poisonous tree." State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999). See State v. O'Bremski, 70 Wash.2d 425, 428, 423 P.2d 530 (1967).
¶ 12 A search incident to arrest is a well-recognized exception to the warrant requirement. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Vrieling, 144 Wash.2d 489, 492, 28 P.3d 762 (2001); State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986). But in Washington the exception to the warrant requirement is narrowly and jealously guarded. Stroud, 106 Wash.2d at 147, 720 P.2d 436. A valid search incident to arrest requires that a lawful arrest is made and that a search is conducted of the area within the immediate control of the individual arrested. Chimel, 395 U.S. at 763, 89 S.Ct. 2034.
¶ 13 The United States Supreme Court has established a bright line rule that if a lawful arrest is made of an occupant in a vehicle, an officer may search the passenger compartment of the vehicle because the arrestee might grab a weapon or destroy evidence located within the compartment. New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Johnson, 128 Wash.2d 431, 447, 909 P.2d 293 (1996). Our Supreme Court has drawn this exception more narrowly and has held that, incident to the driver's arrest, police may search any area of the interior of a vehicle that the driver may reach without leaving the vehicle. Johnson, 128 Wash.2d at 450-56, 909 P.2d 293.
The ultimate teaching of our case law is that the police may not abuse their authority to conduct a warrantless search or seizure under a narrow exception to the warrant requirement when the reason for the search or seizure does not fall within the scope of the reason for the exception.
Ladson, 138 Wash.2d at 357, 979 P.2d 833.
¶ 14 Washington's exception focuses on officer safety and prevention of destruction of evidence. Vrieling, 144 Wash.2d at 494, 28 P.3d 762. "[B]ecause of [Washington's] heightened privacy protection [under article 1, section 7] . . . these exigencies [do not] always allow a search." Stroud, 106 Wash.2d at 151, 720 P.2d 436. As our Supreme Court explained in Stroud:
During the arrest process, including the time immediately subsequent to the suspect[] being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant. The rationale for this is twofold. First, by locking the container, the individual has shown that he or she reasonably expects the contents to remain private. Second[], the danger that the individual either could destroy or hide evidence located within the container or grab a weapon *1052 is minimized. The individual would have to spend time unlocking the container, during which time the officers have an opportunity to prevent the individual's access to the contents of the container.
Stroud, 106 Wash.2d at 152, 720 P.2d 436 (citations omitted).
¶ 15 In addition to determining whether a search incident to arrest was properly limited to the area within the arrestee's immediate control, United States v. Vasey, 834 F.2d 782, 786-87 (9th Cir.1987), we must consider whether the search "was roughly contemporaneous with the arrest." United States v. Tank, 200 F.3d 627, 631 (9th Cir. 2000) (citations omitted). A contemporaneous warrantless search may be conducted shortly after the arrestee has been removed from the area. United States v. McLaughlin, 170 F.3d 889, 893 (9th Cir.1999). The arrest and search should not be separated in time or by intervening acts. McLaughlin, 170 F.3d at 893. The actions following the arrest must be one continuous series of events closely connected in time. McLaughlin, 170 F.3d at 893. "At some point, a significant delay between the arrest and the search renders the search unreasonable because it is no longer contemporaneous with the arrest." State v. Smith, 119 Wash.2d 675, 683, 835 P.2d 1025 (1992).
¶ 16 Assuming, without deciding, that the searched area here was accessible from the passenger area without the vehicle occupants needing to leave the vehicle, even though they were both seated in the front seats of the three rows of seats, and, further, assuming that the search was timely, we address the key issue of whether the officers exceeded the scope of a proper search incident to Valdez's arrest when they called for a drug-sniffing dog when (1) two officers were already on the scene; (2) both the driver and the passenger had been removed from the vehicle; and (3) the initial search of the vehicle was complete and did not reveal evidence of weapons or drugs. The State relies on State v. Boursaw, 94 Wash.App. 629, 976 P.2d 130 (1999), as blanket authority allowing officers to call for a K-9 search after a driver's arrest and removal from the vehicle and following the initial vehicle search.
¶ 17 In Boursaw, the defendant was stopped for a traffic infraction and was arrested because he was driving with a suspended license. 94 Wash.App. at 630-31, 976 P.2d 130. The arresting officer handcuffed the defendant and placed him in the back of the patrol car. Boursaw, 94 Wash.App. at 631, 976 P.2d 130. When the officer searched the defendant's car incident to his arrest he "found plastic ziplock bags and several needles" in an unlocked glove box. Boursaw, 94 Wash.App. at 631, 976 P.2d 130. The officer then called for a K-9 unit that arrived at the scene within 10 minutes. Boursaw, 94 Wash.App. at 631, 976 P.2d 130. The dog alerted to an area under the front ashtray. Boursaw, 94 Wash.App. at 631, 976 P.2d 130. The officer removed the ashtray and discovered a plastic bag containing a substance that tested positive for methamphetamine. Boursaw, 94 Wash.App. at 631, 976 P.2d 130. Division One of this court upheld the search, holding that the delay was reasonable and "the area behind the ashtray is within the reach of the occupants of the automobile." Boursaw, 94 Wash.App. at 636, 976 P.2d 130. But Boursaw turned "on what constitutes activities related to `the securing of the suspect and the scene,' and at what point is the scene sufficiently secured." 94 Wash.App. at 634, 976 P.2d 130 (citation omitted). Moreover, Division One limited Boursaw "to the facts of this case." 94 Wash.App. at 635, 976 P.2d 130. And the original search of the vehicle in Boursaw revealed evidence of illegal drug possession. Boursaw, 94 Wash.App. at 631, 976 P.2d 130.
¶ 18 "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." Maddox, 152 Wash.2d at 505, 98 P.3d 1199. In Boursaw the officers had, in addition to a brief interlude between the arresting officer finding drug paraphernalia and the K-9 search of the front passenger area, probable cause that evidence of illegal activity could be found in the vehicle.
¶ 19 Here, the State argues that the K-9 search was justified because (1) the driver *1053 had been arrested; (2) "the dashboard was missing screws and plastic fasteners, and that it had appeared to be tampered with," Report of Proceedings (RP) at 18; and (3) Valdez inconsistently told the officer that he had just come from Fourth Plain[1] and from Las Vegas.[2] In addition, the officer knew that a headlight was out on the minivan.
¶ 20 But before Dennison called for a K-9 unit he had placed Valdez in the patrol car; there was another officer on the scene; and he had completed his search of the passenger compartment of the vehicle for weapons or destructible evidence. Unlike the officer in Boursaw, he found no weapons, destructible evidence, or evidence of drugs or illegal activity other than loose plastic paneling under the dash. At that point, concerns about officer safety and destruction of evidence did not provide on-going exigent circumstances allowing another warrantless search. Vrieling, 144 Wash.2d at 494, 28 P.3d 762; See Stroud, 106 Wash.2d at 152, 720 P.2d 436.
¶ 21 Furthermore, it was not until the drug dog alerted while searching the vehicle that probable cause existed to search for the presence of a controlled substance. "Generally, an `alert' by a trained dog is sufficient to establish probable cause for the presence of a controlled substance." State v. Jackson, 82 Wash.App. 594, 606, 918 P.2d 945 (1996), review denied, 131 Wash.2d 1006, 932 P.2d 644 (1997). But here, the drug dog alerted during a second search following Dennison's initial search after both the driver and passenger were removed from the vehicle; the scene had been secured by two officers; and the initial search only revealed missing screws and loose front seat-area paneling.
¶ 22 The officers could have applied for a warrant to conduct a second search of the vehicle based on the facts the State relies on to justify the K-9 search after Valdez's arrest and the impoundment of the vehicle. See State v. Simpson, 95 Wash.2d 170, 189, 622 P.2d 1199 (1980) (holding that a motor vehicle may be impounded if there is probable cause to believe that it was used in the commission of a felony). But the record before us does not show probable cause sufficient to warrant a second search for drugs based on the presence of loose paneling and screws and a perceived inconsistent statement about the origin of Valdez and Ruiz's travels. Without the K-9 unit's alert, the officers would not have removed the cup holder and insulation, revealing the presence of drugs. Although it turned out that the officer's suspicion was justified, it was not proper under these circumstances to commence an independent second search, focused solely on the presence of illegal substances, by calling in a K-9 unit without some evidence of the presence of drugs.
¶ 23 The dissent would remove Washington's greater protection of an individual's right to be free of warrantless searches and adopt the United States Supreme Court's broad investiture of police power to thoroughly search a vehicle without evidence of a crime following the driver's arrest. See Stroud, 106 Wash.2d at 147, 720 P.2d 436; Belton, 453 U.S. at 460, 101 S.Ct. 2860. The dissent's focus ignores the legal basis of allowing warrantless searches of unlocked items in a vehicle, i.e., the destruction of evidence, and officer safety. The dissent argues that even if there is no concern on either issuewhen the driver is handcuffed and in a patrol car, there is another officer on the scene, and there is loose paneling and no other evidence of a crime being committedthe police may rely on their experience that some drug couriers put drugs behind car paneling in order to justify a K-9 unit search of the vehicle. This erosion of protections afforded by our Washington Constitution against warrantless searches is not dictated by Smith or Boursaw and we refuse to abandon those protections in favor of the federal rule.[3]
*1054 II. CORPUS DELICTI
¶ 24 Ruiz argues that if the methamphetamine is suppressed, the only evidence that he possessed the methamphetamine with the intent to distribute was his confession. We agree that under Washington's corpus delicti rule, Ruiz's confession, standing alone, was insufficient evidence for conviction.
¶ 25 "Washington's version of the corpus delicti rule requires that the State produce evidence, independent of the accused's statements, sufficient to support a finding that the charged crime was committed by someone." State v. Bernal, 109 Wash. App. 150, 152, 33 P.3d 1106 (2001), review denied, 146 Wash.2d 1010, 52 P.3d 519 (2002) (first emphasis added). "A confession or admission, standing alone, is insufficient to establish the corpus delicti of a crime." State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995) (emphasis added).
¶ 26 We reverse and remand with instructions to suppress the seized evidence.
I concur: HOUGHTON, C.J.
HUNT, J.
¶ 27 I concur in the majority's reversal of passenger Ruiz's conviction based on their holding that (1) there were no legitimate grounds to search Ruiz, (2) the independent source rule does not apply to the circumstances surrounding Ruiz, and (3) therefore, the trial court should have suppressed the evidence found inside the van with respect to the State's prosecution of Ruiz. But I respectfully dissent from the majority's holding that the police officers' use of a K-9 dog to sniff inside the passenger compartment of Valdez's van was not part of a valid search incident to his arrest and was, therefore, inadmissible against him. I would affirm Valdez's conviction.

I. STANDARD OF REVIEW
¶ 28 We review a trial court's denial of a motion to suppress by determining (1) whether substantial evidence exists to support the trial court's findings, and (2) in turn, whether those findings support the trial court's conclusions of law. State v. Jacobs, 121 Wash.App. 669, 676, 89 P.3d 232 (2004), rev'd on other grounds, 154 Wash.2d 596, 115 P.3d 281 (2005). We may affirm on any ground that the record and briefs adequately support. Keever & Assocs. v. Randall, 129 Wash.App. 733, 740, 119 P.3d 926 (2005), review denied, 157 Wash.2d 1009, 139 P.3d 349 (2006).
¶ 29 I would affirm the trial court here on the ground that calling the K-9 dog to sniff the passenger compartment, after the officers discovered suspicious loose panels, which they recognized as a sign of possibly hidden illegal drugs, was within the legitimate scope of the officers' search of Valdez incident to his arrest on an outstanding warrant.

II. SEARCH INCIDENT TO ARREST
¶ 30 The majority acknowledges that (1) a search incident to arrest is a well-recognized exception to the warrant requirement, Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Vrieling, 144 Wash.2d 489, 492, 28 P.3d 762 (2001); (2) a search incident to arrest of an automobile driver extends to the vehicle's entire passenger compartment. State v. Johnson, 128 Wash.2d 431, 455, 909 P.2d 293 (1996) (a truck's sleeping area is part of the passenger compartment because it is reachable without exiting the vehicle); and (3) the officers here acted lawfully in searching the inside of Valdez's van incident to his arrest on an outstanding warrant.
¶ 31 I disagree with the majority's conclusion, however, that the officers' use of a drug-sniffing dog (1) "exceeded the scope of a proper search incident to Valdez's arrest," Majority at ___; and (2) therefore, was "an impermissible second warrantless search," Majority at ___ n. 3, which required the officers to obtain a warrant, presumably based on additional probable cause. Washington case law does not impose such a requirement and, in my view, it would be improvident for us to create one here.[4] Instead, *1055 I would hold that a trained dog sniff during an otherwise valid search incident to arrest does not exceed the scope of the search incident to arrest.

A. Dog Sniff Within Scope of Lawful Search Incident to Arrest
¶ 32 The majority relies on their characterization of the K-9 search as a "secondary" search, distinct from the officers' "primary" or "initial" search of Valdez incident to his arrest. In my view, the case law not only fails to support this "primary-secondary" distinction under the facts presented here, but also holds to the contrary. See, e.g. State v. Smith, 119 Wash.2d 675, 684, 835 P.2d 1025 (1992) (no independent probable cause required to search fanny pack because search was contemporaneous with the arrest.).
¶ 33 Here, the officers conducted a continuous search incident to Valdez's arrest on an outstanding warrant. Because Valdez was driving a vehicle, they first briefly patted him down and cursorily checked his van for weapons and immediately obvious destructible evidence. After they secured him, they continued their legitimate search incident to his arrest with a more thorough check of the interior of his van. That the officers paused during the course of that search to call for the K-9 unit did not end their continuing, lawful search incident to Valdez's arrest, especially where the officers had not yet completed their search of his van incident to his arrest.
¶ 34 Except for locked containers, Johnson allows a search of the entire interior of the driver's vehicle incident to arrest. In my view, for purposes of a search of a vehicle's interior incident to a driver's arrest under State v. Stroud,[5] there is little qualitative difference among unlocked containers, loose panels, and removable cup holders inside a vehicle. See Johnson, 128 Wash.2d at 449, 909 P.2d 293.[6] Acting within this lawful scope of a search of Valdez's van's interior incident to his arrest, the officers could have removed the loose panels and the non-fixed cup holder, and they could have searched any other non-secured or unlocked area within the van's interior. See also State v. Stroud, 106 Wash.2d 144, 150, 720 P.2d 436 (1986).[7]
*1056 ¶ 35 The officers here expedited their lawful search of the interior of Valdez's van and its unlocked contents with the aid of a K-9 sniffer dog, who helped them focus more quickly on the spots most likely to conceal illegal drugs, thus, reducing the need to remove unnecessarily other loose panels, cup holders, and other similarly "unlocked containers" within the van's exterior that did not conceal illegal drugs. This use of the K-9 dog to expedite the search of the van's interior was a continuation of the ongoing lawful search incident to Valdez's arrest. Use of the dog-sniff was not, therefore, a "second search," as the majority characterizes it (Majority at ___). Consequently, the dog sniff did not require a second warrant and it did not violate Washington State Constitution, article 1, section 7. Johnson, 128 Wash.2d at 451-52, 909 P.2d 293; State v. Boursaw, 94 Wash.App. 629, 634-35, 976 P.2d 130 (1999) (officers may conduct a K-9 search incident to a driver's arrest even after the driver's removal from the vehicle). See also Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (a trained dog sniff during a valid traffic stop does not compromise a legitimate privacy interest).

B. Reasonable Suspicion
¶ 36 The majority attempts to distinguish Division I's Boursaw opinion by asserting that the arresting officers here initially found no explicit evidence of drugs. I respectfully disagree with this distinction.
¶ 37 The plastic ziplock bags and needles that the officers found in Boursaw were not qualitatively different, as unequivocal evidence of drug use, from the loose panels in Valdez's van. As here, it was the Boursaw officers' narcotics arrest experience that led them to associate needles and plastic bags with illegal drug activity, in which, as a result, they reasonably suspected Boursaw was involved. Similarly, here, the officers' observation that Valdez's van's paneling had been tampered with, similarly arguably innocuous but for the officers' narcotics experience, led them to suspect correctly that drugs might be hidden behind the loose interior paneling.
¶ 38 That such suspicion was reasonable is amply supported by case law. See, e.g., United States v. Ross, 456 U.S. 798, 820, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (An experienced law enforcement officer would know that drug couriers do not often leave their contraband "strewn across the trunk or floor of a car," and that they frequently hide drugs. . . . inside the cavities in a car's panels); United States v. Mendez, 118 F.3d 1426, 1432 (10th Cir.1997) (legitimate officer suspicion after observing a crooked dashboard faceplate and dismounted radio); United States v. Pena, 920 F.2d 1509, 1512 (10th Cir.1990) ("loose, crooked and missing screws on the interior molding" led officer to discover cocaine in the quarter panel), cert. denied, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). In my view, any differences among the officers' suspicion here and the officers' suspicions in Boursaw, Ross, and the two federal circuit court cases is immaterial to the reasonableness of the officers' respective suspicionsall five situations, including this one, involved officers relying on their experience to recognize indicia of possible unlawful drug activity.
¶ 39 Finding Boursaw's rationale consistent with our state constitutional principles as set forth in Smith and with federal constitutional rules set forth in Belton and its progeny, I would adopt Boursaw here, uphold the trial court's denial of Valdez's motion to suppress based on this alternate ground, and affirm his conviction.
NOTES
[1] We take judicial notice that Fourth Plain is a street in Vancouver, Washington.
[2] The appellants began their trip in Las Vegas.
[3] Ruiz contends that the use of the K-9 unit was overly intrusive. Because we find that the search was an impermissible second warrantless search, it is unnecessary to address this issue or other issues Ruiz raises, other than to briefly address Ruiz's assertion that absent the illegally seized evidence, his statements cannot be used to support his conviction.
[4] The majority's "primary-secondary search" dichotomy might require additional probable cause for the officers to resume their lawful search incident to arrest every time an officer steps away from a vehicle after a preliminary inspection, perhaps to question the driver or a witness or to do a records check on his patrol computer. Such result would be in direct conflict with our Supreme Court's rule in State v. Smith, 119 Wash.2d 675, 684, 835 P.2d 1025 (1992).
[5] 106 Wash.2d 144, 720 P.2d 436 (1986).
[6] Johnson, 128 Wash.2d at 449-52, 909 P.2d 293:

[I]n State v. Fladebo, [113 Wash.2d 388, 779 P.2d 707 (1989)] we extended the Stroud rule, holding that all unlocked containers found inside the passenger compartment of a vehicle could be searched during, or soon after, custodial arrest of its occupant. In that case we concluded that the defendant's purse, found in the passenger compartment, was an unlocked container and thus subject to search.
. . . .
[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.
(Footnotes omitted.)
[7] Our Supreme Court's dictum in Stroud focuses on a defendant's privacy interest in containers in his vehicle:

In recent cases, the United States Supreme Court has enlarged the narrow exceptions to the prohibition in the Fourth Amendment against warrantless searches. The effect has been to make lawful a warrantless search of a passenger compartment of a car, and all containers (luggage, paper bags, etc.) inside it, pursuant to a lawful custodial arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The Supreme Court has also held that, if the officers have probable cause to believe that the trunk contains contraband, they may also search any containers inside the trunk for this contraband. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
These exceptions to the Fourth Amendment were part of narrowly and jealously drawn exemptions to the warrant requirement. The rationale for these decisions was that the exigencies of the situation surrounding a car search pursuant to a custodial arrest out-weighed whatever privacy interests the driver and passengers had in the articles and containers in the car. Belton, [453 U.S.] at 461, [101 S.Ct. 2860].
Stroud, 106 Wash.2d at 147, 720 P.2d 436 (emphasis added).